**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE MEZA as an individual, on be-half of herself, the general public and those simi-larly situated,<br><br>    Plaintiff,<br><br>                    v.<br><br>COTY, INC.,<br><br>    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESEN-TATION; UNFAIR BUSINESS PRAC-TICES; AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

**INTRODUCTION**

1.      Plaintiff Antoinette Meza, by and through her counsel, brings this class action against Coty, Inc. ("Defendant") to seek redress for Defendant's deceptive and unlawful practices in labeling and marketing its cosmetic products that make "24 HR" SPF claims.

2.      Consumers are increasingly aware of the risks associated with sun exposure and its effect on skin. Cosmetic consumers are attracted to products that provide protection against the sun's harmful ultraviolet ("UV") rays in addition to the products' cosmetic benefits. Consumers rely on labels to determine the SPF protection that a product provides.

3.      Developed decades ago, the Sun Protection Factor ("SPF") is the most accepted method for evaluating the photo-protective efficacy of sunscreens. While SPF products protect against UV rays, the SPF is only fully effective for two hours after it is applied. After two hours, the SPF product must be reapplied to provide continued protection from the sun.

4.      Defendant sells cosmetic products under the brand names CoverGirl and Rimmel. Intending to profit from consumers' desire to protect their skin from the sun's harmful rays, Defendant developed cosmetic products with SPF protection, and labeled these products with "24 HR" claims such as "24 HR FULL COVERAGE SPF 18 OCTINOXATE SUNSCREEN LIQUID FOUNDATION" on the CoverGirl Extreme 3-in-1 Foundation. The products do not and cannot provide 24 hours of SPF protection. The products' labels are therefore false, deceptive and/or misleading.

5.      Furthermore, the products' labels violate federal and California regulations regarding labeling for each of the following reasons. Under the Federal Food, Drug, and Cosmetic Act (the "Act"), the products are each a "sunscreen" because the labeling suggests to consumers that it is intended to "prevent, cure, treat, or mitigate disease or to affect a structure or function of the body." 21 C.F.R. § 700.35 (defining cosmetics that contain sunscreen ingredients subject the cosmetic to sunscreen labeling requirements). The products contain sunscreen ingredients, including octinoxate. *See* 21 C.F.R. § 352.10 (defining active sunscreen ingredients). Therefore, the products are required to comply with, *inter alia*, sunscreen labeling requirements that generally

prohibit "claims that would be false and/or misleading on sunscreen products" (21 C.F.R. §
201.327(g)).

6.     The claims are therefore false and misleading in violation of the Act. For the same
reason, the labeling of the Products also violates California Health & Safety Code § 111730,
which states that cosmetics "any cosmetic is misbranded if its labeling is false or misleading in
any particular." Plaintiff brings this action to stop Defendant's misleading practices.

## PARTIES

7.     Antoinette Meza ("Plaintiff") is, and at all times alleged in this Class Action Com-
plaint was, an individual and a resident of San Jose, California. She makes her permanent home in
California and intends to remain in California.

8.     Defendant Coty, Inc. is a corporation existing under the laws of the State of Dela-
ware, having its principal place of business in New York, New York.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of this action pursuant to 28
U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of
interest and costs; and Plaintiff and Defendant are citizens of different states.

10.     The injuries, damages and/or harm upon which this action is based, occurred or
arose out of activities engaged in by Defendant within, affecting, and emanating from, the State
of California. Defendant regularly conducts and/or solicits business in, engages in other persistent
courses of conduct in, and/or derive substantial revenue from products provided to persons in the
State of California. Defendant has engaged, and continues to engage, in substantial and
continuous business practices in the State of California.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a
substantial part of the events or omissions giving rise to the claims occurred in the state of
California, including within this District.

12.     In accordance with California Civil Code Section 1780(d), Plaintiff Meza
concurrently files herewith a declaration establishing that, at various times throughout the class
period, she purchased CoverGirl Outlast Extreme Wear 3-in-1 Foundation from a Walgreens

retail store in San Jose, California. (Plaintiff's declaration is attached hereto as Exhibit A.)

13. Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

**Defendant's Products**

14. Defendant manufactures, distributes, markets, advertises, and sells a variety of cosmetic products under the brand names "CoverGirl" and "Rimmel."

15. The cosmetic products include foundations and powders that are typically applied to the face. These products often wear off throughout the day and need to be reapplied throughout the day. Products that advertise that they last 24 or more hours are appealing to consumers so that they will not have to reapply the product throughout the day.

16. Cosmetic consumers are also attracted to products that provide sun protection. Sun UV rays damage the skin and contribute to risks, such as skin cancer, and an increase in aging of the skin, such as fine lines and wrinkles. Products that combine the cosmetic benefits associated with foundations and powders with the sun protection benefits of an SPF are appealing to consumers because it reduces the number of products a consumer needs to purchase and apply.

17. In recent years, consumer demand for sun care products has increased at a steady rate. In 2019, 1 in 3 adults in the U.S. used cosmetic products having SPF ingredients.[1]

18. Sunscreens have an SPF that denotes the level of sun protection provided. Sunscreens provide the designated level of SPF protection for two hours. After two hours, the sunscreen must be reapplied, otherwise the skin will be exposed to the harm of UV rays. This is acknowledged in 21 C.F.R. § 201.327, which requires SPF products to be labeled with instructions to "reapply at least every two hours."

19. In order to compete with a growing market of SPF cosmetic products, Defendant has advertised that its Products will last longer than 2 hours. Defendant has violated FDA policies and regulations and for the reasons described herein, its labels are misleading and deceptive.

---

[1] https://www.fortunebusinessinsights.com/sun-care-products-market-103821

20.     The CoverGirl and Rimmel products at issue predominately, uniformly, and consistently include an SPF claim alongside a claim that the products last longer than two hours on the principal display panel of the product labels. The foundations and powders come in 10-15 shades per product, designed to match various skin tones. These products, and any others that communicate an SPF claim that the Products will last longer than two hours will hereinafter be referred to as the "Products."[2]

21.     The representation that the Products will provide SPF protection longer than two hours was uniformly communicated to Plaintiff and every other person who purchased any of the Products in California. The same or substantially similar product label has appeared on each respective Product during the entirety of the Class Period in the general form of the following examples:

 

22.     The Products' front label emphasize the hours that the Products will last, include "24HR" and "25 HR." A reasonable consumer will interpret the hours to mean the Product will provide the advertised benefits for the full period of time without the need to reapply. For example, the CoverGirl Product pictured above claims "Full Coverage," "SPF 18," and "Octinoxate

---

[2] The CoverGirl Products include all shades of the Outlast 3-in-1 foundation and the Outlast Active foundation. The Rimmel Products include all shades of the Lasting Finish 25HR Foundation.

Sunscreen Liquid Foundation." Likewise, the Rimmel Product pictured above advertises "Full coverage," "hydration boost" and "SPF 20." A reasonable consumer will believe the Products will provide those benefits, including the SPF protection, for the advertised respective 24 or 25 hours.

23.     However, the Products will not provide SPF protection for over 24 hours. The SPF protection will only last, at most, 2 hours.

**Sun Exposure and SPF**

24.     Sunlight travels to Earth as a mixture of both visible and invisible rays, or waves. One such wave is ultraviolet (UV) light. The longest of the UV rays are called UVA rays and the shorter ones are called UVB rays.

25.     UVA and UVB rays affect the skin differently. UVB rays can lead to sunburn. UVA rays penetrate more deeply into the skin and affects skin aging.

26.     Unprotected exposure to UVA and UVB rays damages the DNA in skin cells, producing genetic defects, or mutations, that can lead to skin cancer or premature aging.

27.     UV radiation is a proven human carcinogen, causing basal cell carcinoma (BCC) and squamous cell carcinoma (SCC). UV exposure that leads to sunburn contributes to developing melanoma, a dangerous type of skin cancer.

28.     UV damage also contributes to premature aging because of its effect on the underlying connective tissue of skin.

29.     Sunscreen works in two different ways depending on the ingredient providing the sun protection. Chemical-based sunscreens work by absorbing ultraviolet (UV) rays and altering them before they cause damage. Common chemical ingredients include oxybenzone and octisalate. Mineral or physical based ingredients work by reflecting and scattering UV rays away from the skin. Zinc is a common mineral ingredient used in sunscreen.

30.     Using sunscreen decreases the risk of skin cancers and skin precancers. Regular daily use of SPF 15 sunscreen can reduce the risk of developing SCC by about 40 percent, and lower the risk of melanoma by 50%.

31.     Sunscreen also helps prevent premature skin aging caused by the sun, including wrinkles, sagging, and age spots.

32.     Two hours after application of sunscreen, the sunscreen ingredients lose their effectiveness in protecting the skin from UV damage. Therefore, sunscreen must be reapplied every two hours.

**Federal and State Regulations of Sunscreens**

33.     Under the Federal Food, Drug, and Cosmetic Act (the "Act"), cosmetics containing sunscreen ingredients are considered drugs by the FDA because they are used to "prevent, cure, treat, or mitigate disease or to affect a structure or function of the body." 21 C.F.R. § 700.35 (defining cosmetics that contain sunscreen ingredients subject the cosmetic to sunscreen labeling requirements).

34.     Ordinarily there is a premarket approval process for drugs, but in the instance of sunscreen, it is subject to the "monograph" system for nonprescription drugs. A monograph applies to a class of drugs, and specifies the permissible active ingredients, labeling claims, and other standards for each class of drug.

35.     Sunscreen products include cosmetic products with SPF ingredients. The Products contain sunscreen ingredients, including octinoxate. *See* 21 C.F.R. § 352.10 (defining active sunscreen ingredients).

36.     The regulations generally prohibit "claims that would be false and/or misleading on sunscreen products." 21 C.F.R. § 201.327(g). "There are claims that would be false and/or misleading on sunscreen products. These claims include but are not limited to the following: 'Sunblock,' 'sweatproof,' and 'waterproof.'" *Id.*

37.     Among the labeling requirements, sunscreen cosmetic products, including the Products at issue here, must include specific language for directions on use. Products that are not water resistant must state: "Reapply at least every 2 hours" 21 C.F.R. § 201.327. Where a product does claim to be water resistant, the label must state: "reapply after [40 minutes of or 80 minutes of] swimming or sweating, immediately after towel drying, at least every 2 hours.]" *Id.*

38.     Defendant's Products contain a drug facts label that states "reapply at least every 2 hours." However, it is buried underneath a sticker on the back panel of the Product. When a consumer looks at the Product in the store, they will not see the instruction to reapply the product every 2 hours unless they tear the back label in order to lift the sticker and find the appropriate page of the multi-page drug facts label. An exemplar of the back label for the CoverGirl 3-in-1 Outlast foundation is below:



39.     And below is a photo of an exemplar of the drug facts label that has been pulled open by tearing the sticker on the back label:

Class Action Complaint



40.     The Products claim that they will provide 24 hours of SPF sun protection when in fact they will only provide 2 hours of protection. Moreover, the back label describes the Product as "SWEATPROOF, HUMIDITY PROOF" when the regulations indicate that the use of such terms would be per se misleading. The claims are therefore false and misleading in violation of the Act. For the same reason, the labeling of the Products also violates California Health & Safety Code § 111730, which states that cosmetics "any cosmetic is misbranded if its labeling is false or misleading in any particular."

**Defendant's Marketing and Labeling of its Products Violates State and Federal Food Labeling Laws**

41.     Defendant's labeling of its SPF cosmetic products is unlawful, false, misleading and deceptive to consumers. The Products deceive consumers by advertising that the Products will provide SPF protection for longer than 2 hours. These claims are false. The Products do not and cannot provide more than 2 hours of SPF protection. For the same reason, the claims are misleading to consumers who rely on the claims and use the Products, believing they will provide, for example, 24 hour protection from the sun.

42.     The deception is further compounded by claims, for example, "SWEATPROOF, HUMIDITY PROOF" on the CoverGirl 3-in-1 foundation. Sweatproof claims are explicitly prohibited on sunscreen products because they are per se misleading. 21 C.F.R. § 201.327(g).

43.     Defendant intends consumers to believe that the Products provide SPF protection longer than 2 hours. For example, the website for the CoverGirl 3-in-1 foundation states: "This foundation with SPF has a lightweight, cake-free 24-hour formula that absorbs quickly to provide full coverage and hydrate your skin while protecting it from UVs."[3]

44.     The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 111730.

45.     Defendant has violated the standards set by FDA regulations, including, but not limited to, 21 C.F.R. § 201.327(g), which are parallel to the Sherman Law.

46.     A reasonable consumer would expect that the Products provide SPF protection for the number of hours advertised on the label, for example 24 or 25 hours.

47.     Consumers lack the meaningful ability to test or independently ascertain the truthfulness of Defendant's SPF claims, especially at the point of sale. Consumers would not know that the Products cannot provide more than 2 hours of SPF protection, and are unlawfully labeled. Its discovery requires investigation well beyond the drug store aisle and knowledge of regulations and chemistry beyond that of the average consumer. Therefore, consumers had no reason to investigate whether the Products actually provide more than 2 hours of SPF protection as the labels claim.

48.     Consumers are not expected to inspect layers of stickers on the back label to discover the instructions to reapply the product every 2 hours. Nor would a reasonable consumer expect that the buried back label would contradict the front label SPF representations. As a matter of law, the Ninth Circuit has rejected the notion that a misleading statement on the front can be remedied by disclosures made elsewhere on the packaging. *See Williams v. Gerber Prods. Co.*,

_____

[3] https://www.covergirl.com/en_us/face-makeup/outlast-extreme-wear-liquid-foundation.html#pdpCarousel-99350067850

552 F. 3d 934, 939-40 (9th Cir. 2008). Thus, reasonable consumers relied on Defendant's representations regarding the length of SPF protection.

**Defendant Intends to Continue to Market the Products as Providing More Than 2 Hours of SPF Sun Protection**

49.     Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claim that the Products provide more than 2 hours of SPF sun protection.

50.     Because consumers pay a price premium for products that contain SPF, Defendant is able to both increase its sales and retain more profits by labeling its Products as providing, for examples, 24 hours of SPF protection.

51.     Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of the Products while decreasing the sales of competitors' products that are not unlawfully and misleadingly labeled, and/or (ii) commanding a higher price for the Products because consumers will pay more for them due to consumers' demand for cosmetic products with SPF protection.

52.     According to one market analysis, the sun protection products market had an overall valuation of $15.3 Billion dollars in 2021. The market for SPF-containing cosmetics is continuing to grow and expand, and because Defendant knows consumers rely on representations regarding the number of hours the Products will last, Defendant has an incentive to continue to make such false and misleading representations.

53.     In addition, other trends suggest that Defendant has no incentive to change its labeling practices. For example, one market analysis revealed that the market for sun protection products expected to grow at a 6.6% compound annual growth rate through 2031. In the next ten years, the consumption of sun protection products for skin is expected to witness 1.8 times growth.[4]

54.     Defendant continues to launch new SPF-containing cosmetic lines to diversify its portfolio to maintain its competitive edge, making it likely that Defendant will continue to unlaw-

---

[4] https://www.factmr.com/report/140/sun-protection-products-market

fully and misleadingly advertise the Products to perpetuate the misrepresentations regarding how long the SPF sun protection lasts.

**PLAINTIFF'S EXPERIENCES**

55.     Plaintiff Meza purchased the CoverGirl Extreme 3-in-1 Foundation on multiple occasions from 2018-2022 from local retail stores, including a purchase on or about March 30, 2022 from a Walgreens retail store in San Jose, California.

56.     Plaintiff Meza made each of her purchases after reading and relying on Defendant's product label that advertised "24 HR FULL COVERAGE SPF 18 OCTINOXATE SUNSCREEN LIQUID FOUNDATION." She believed the Products would provide her with 24 hours of coverage and SPF 18 sun protection.

57.     At the time of each of her purchases of the Products, Plaintiff Meza did not know that the Products were unlawfully labeled and would not provide the claimed SPF protection for 24 hours. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Plaintiff.

58.     Plaintiff Meza not only purchased the Products because of the unlawful and misleading labeling, but she also paid more money for the Products than she would have paid for other or a similar cosmetic product that was not unlawfully and misleadingly labeled with the 24 hour SPF claims.

59.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Plaintiff would not have purchased them or, at a very minimum, she would have paid less for the Products.

60.     Plaintiff Meza continues to desire to purchase cosmetic products, including those marketed and sold by Defendant. If the Products were reformulated and/or relabeled without the misleading 24 hour SPF claims, Plaintiff would likely purchase the Products again in the future. Plaintiff regularly visits stores where the Products and other cosmetics are sold.

Class Action Complaint

# CLASS ALLEGATIONS

61.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> The Class: All persons in the state of California who purchased the Products between September 16, 2018 and the present.

62.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

63.     Numerosity: Plaintiff does not know the exact size the Class, but she estimates that each is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

64.     Common Questions Predominate: This action involves common questions of law and fact to the potential Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products provide more than 2 hours of SPF protection as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

a.     Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

b.     Whether Defendant's actions violate Federal and California laws invoked herein;

c.     Whether labeling the Products with false and misleading claims causes them to command a price premium in the market as compared with similar products that do not make such misrepresentations;

d.     Whether Defendant's advertising and marketing regarding the Products sold to the

class members was likely to deceive reasonable consumers;

    e.   Whether representations regarding the number of hours the SPF protection will last are material to a reasonable consumer;

    f.   Whether a reasonable consumer interprets the labels to mean the Products provide more than 2 hours of sun protection;

    g.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

    h.   The amount of profits and revenues earned by Defendant as a result of the conduct;

    i.   Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

    j.   Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

65.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

66.    Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all Class members because it is in her best interest to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and that of the Class. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class

members.

67.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

68.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

69.     Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

## PLAINTIFF'S FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff and the Class**

70.     Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

71.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

72.     Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

73.     The Products that Plaintiff (and other similarly situated Class members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

74.     Defendant's acts and practices, set forth in this Class Action Complaint, led consumers to falsely believe that the Products provided more than 2 hours of SPF protection as claimed on the product package. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8), of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. Finally, regarding California Civil Code §1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike other SPF-containing cosmetic product manufacturers, it sells Products that will provide more than 2 hours of sun protection.

75.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant continuing practices.

76.     On or about July 8, 2022, Plaintiff provided Defendant with notice and demanded that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or de-

ceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, they failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

77.    Plaintiff also requests that this Court award her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiff and the Class**

78.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

79.    Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendant made false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

80.    Defendant made representations and statements (by omission and commission) that led reasonable customers to believe that the Products provide more than 2 hours of sun protection.

81.    Plaintiff and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

82.    Defendant's acts and omissions are likely to deceive the general public.

83.    Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

Professions Code.

84.    The aforementioned practices, which Defendant used, and continues to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

85.    As a direct and proximate result of such actions, Plaintiff and the other class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's false, deceptive and misleading advertising. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

86.    Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires her to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'").

87.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that

the above-described practices constitute false, misleading and deceptive advertising.

88.     Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they are not entitled. Plaintiff, those similarly situated and/or other consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiff and the Class**

89.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

90.     Defendant has fraudulently and deceptively informed Plaintiff that the Products provide more than 2 hours of sun protection.

91.     These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant knew or should have known the composition of the Products, and knew or should have known that the Products do not and cannot provide more than 2 hours of sun protection, and results in misleading consumers. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendant's Products. In misleading Plaintiff and not so informing Plaintiff, Defendant breached its duty to her. Defendant also gained financially from, and as a result of, its breach.

92.     Plaintiff and those similarly situated relied to their detriment on Defendant's

misrepresentations and fraudulent omissions. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

93. By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products and/or pay more for the Products.

94. Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

95. As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

96. Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the Class**

97. Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

98. Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

99. In particular, Defendant has engaged, and continues to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman

Law (Article 3), including without limitation, California Health & Safety Code § 111730; and (v) federal laws regulating the advertising and branding of sunscreen, including but not limited to 21 C.F.R. § 201.327(g).

100.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, misrepresenting that the Products provide more than 2 hours of sun protection.

101.    Plaintiff and those similarly situated relied to their detriment on Defendant unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

102.    Defendant's acts and omissions are likely to deceive the general public.

103.    Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

104.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

105.    As a direct and proximate result of such actions, Plaintiff and the other Class members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

Class Action Complaint

106.     As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

107.     Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law and the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

108.     Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea*

(intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

109.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

110.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

111.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

112.    Plaintiff and members of the Class conferred a benefit on the Defendant by purchasing the Products.

113.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products provide more than 2 hours of sun protection when, in fact, the Products do not and cannot provide more than 2 hours of sun protection. This harmed Plaintiff and members of the class because they paid a price premium as a result.

114.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those

similarly situated have no adequate remedy at law to obtain this relief.

115.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution her and other members of the Class.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully requests that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial, except as to those causes of action where compensatory damages are not available at law;

D.    An award of statutory damages in an amount to be determined at trial, except as to those causes of action where statutory damages are not available at law;

E.    An award of punitive damages in an amount to be determined at trial, except as to those causes of action where punitive damages are not available at law;

F.    An award of treble damages, except as to those causes of action where treble damages are not available at law;

G.    An award of restitution in an amount to be determined at trial, except as to those causes of action where restitution is not available at law;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: September 16, 2022            **GUTRIDE SAFIER LLP**

*/s/Seth A. Safier/s/*
Seth A. Safier, Esq.
Marie McCrary, Esq.
Hayley Reynolds, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

DocuSign Envelope ID: 3D782DE0-2866-40E6-BECA-AF0D4A80968B

# **EXHIBIT A**

I, Antoinette Meza, declare:

1.     I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

1.     I submit this Declaration pursuant to California Code of Civil Procedure § 2215.5 and California Civil Code § 1780(d).

2.     As set forth in my complaint, I purchased the CoverGirl Extreme 3-in-1 Foundation on multiple occasions from 2018-2022 from local retail stores, including a purchase on or about March 30, 2022 from a Walgreens retail store in San Jose, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 13th day of September, 2022 in San Francisco, California.



_____
Antoinette Meza

EXHIBIT A – DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION