**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Hayley A. Reynolds (State Bar No. 306427)
  hayley@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE MEZA, an individual, on behalf of herself, the general public, and those similarly situated,<br><br>                Plaintiff,<br><br>    v.<br><br>COTY, INC.,<br><br>                Defendant. | Case No. 5:22-cv-05291-NC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Hearing:     February 1, 2023<br>Time:        1:00 p.m.<br>Location:    Remote (Zoom)<br><br>Mag. Judge Nathanael M. Cousins |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     BACKGROUND ...................................................................................................2

        A.      The Products. ...........................................................................................2

        B.      Regulatory Framework. ...........................................................................3

        C.      Drug Facts Panel on Sunscreen................................................................3

III.    ARGUMENT .......................................................................................................4

        A.      Plaintiff Alleges a Reasonable Consumer Would Be Misled. ................4

        B.      Plaintiff's Claims Are Not Preempted. ....................................................7

                1.      Plaintiff's claims are not expressly preempted. ...........................7

                2.      Plaintiff's claims are not impliedly preempted under *Buckman*. ............10

                        a.      *Buckman* does not apply to false advertising claims. ................11

                        b.      *Buckman* is not as broad as Defendant asserts...........................12

        C.      Plaintiff Has Standing to Seek Injunctive Relief. .................................15

        D.      Plaintiff Has Standing to Sue About Products She Did Not Purchase. ..............16

        E.      Plaintiff Satisfies Rule 9(b)...................................................................17

        F.      Plaintiff States a Claim for Unjust Enrichment. ...................................19

        G.      Plaintiff Adequately Pleads that She Lacks an Adequate Remedy at Law.........20

IV.     PLAINTIFF REQUESTS LEAVE TO AMEND IF NECESSARY ...........................22

V.      CONCLUSION...................................................................................................23

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS – CASE NO. 5:22-CV-05291-NC

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Am. Life Ins. Co. v. Stewart*,
    300 U.S. 203 (1937)...............................................................................................20

4

*Ang v. Bimbo Bakeries USA, Inc.*,
5
    No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)......16, 17

6
*Astiana v. Ben & Jerry's Homemade, Inc.*,
    No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ...................................17
7

8
*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
    No. C-11-2910-EMC, 2012 U.S. Dist. LEXIS 101371 (N.D. Cal. July 20, 2012)..............16

9
*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ........................................................................8, 9, 19
10

11
*Bates v. Dow Agrosciences, LLC*,
    544 U.S. 431 (2005).................................................................................................7

12
*Borchenko v. L'Oreal USA, Inc.*,
    389 F. Supp. 3d 769 (C.D. Cal. 2019) ...............................................................13
13

14
*Brazil v. Dole Food Co.*,
    935 F. Supp. 2d 947 (N.D. Cal. 2013) ...............................................................12

15
*Brown v. Natures Path Foods, Inc.*,
    No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .............21
16

17
*Brown v. Van's Int'l Foods, Inc.*,
    No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 84477 (N.D. Cal. May 10, 2022)............15

18
*Bruton v. Gerber Products Co.*, 7
    03 F. App'x 468 (9th Cir. 2017) ........................................................................18
19

20
*Buckman Co. v. Plaintiffs' Legal Comm.*,
    531 U.S. 341 (2001)....................................................................10, 11, 12, 13

21
*Chacanaca v. Quaker Oats Co.*,
    752 F. Supp. 2d 1111 (N.D. Cal. 2010) ...............................................................16
22

23
*Clancy v. Bromley Tea Co.*,
    308 F.R.D. 564 (N.D. Cal. 2013)........................................................................14

24
*Dailey v. A&W Concentrate Co.*,
    No. 20-cv-02732-JST, 2021 U.S. Dist. LEXIS 40850 (N.D. Cal. Feb. 16, 2021)...............16
25

26
*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ........................................................14, 15, 17, 18

27
*De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*,
    520 U.S. 806 (1997)..................................................................................................7

28

*De Keczer v. Tetley USA, Inc.*,
    No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465 (N.D. Cal. Aug. 28, 2014) ....... 12

*Deras v. Volkswagen Grp. of Am., Inc.*,
    No. 17-cv-05452-JST, 2018 U.S. Dist. LEXIS 83553 (N.D. Cal. May 17, 2018) ............. 21

*DeSoto v. Yellow Freight Sys.*,
    957 F.2d 655 (9th Cir. 1992) ........................................................................................ 22

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .......................................................................................... 4

*Eckler v. Neutrogena Corp.*,
    238 Cal. App. 4th 433 (Cal. Ct. App. 2015) ............................................................. 9, 10

*Elgindy v. AGA Serv. Co.*,
    No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269 (N.D. Cal. Mar. 29, 2021) .............. 21

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*,
    No. 19-CV-2886(EK)(PK), 2021 U.S. Dist. LEXIS 189143 (E.D.N.Y. Sep. 30, 2021) .... 5, 6

*Fagan v. Neutrogena Corp.*,
    No. 5:13-CV-01316-SVW-OP, 2014 U.S. Dist. LEXIS 2795 (C.D. Cal. Jan. 8, 2014) ........ 8

*Gaeta v. Perrigo Pharmaceuticals Co.*,
    630 F. 3d 1225 (9th Cir. 2011) ..................................................................................... 13

*Gross v. Vilore Foods Co.*,
    No. 20cv0894 DMS (JLB), 2020 U.S. Dist. LEXIS 200913 (S.D. Cal. Oct. 28, 2020) ....... 21

*Ham v. Hain Celestial Grp., Inc.*,
    70 F. Supp. 3d 1188 (N.D. Cal. 2014) .......................................................................... 17

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ............................................................................ 12

*In re Facebook, Inc.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................................................................... 19

*In re Juul Labs, Inc.*,
    No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766 (N.D. Cal. Oct. 23, 2020) ........ 21

*In re S.C. Johnson & Son, Inc.*,
    No. 20-cv-03184-HSG, 2021 U.S. Dist. LEXIS 141101 (N.D. Cal. July 28, 2021) ........... 19

*Ivie v. Kraft Foods Glob., Inc.*,
    No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615 (N.D. Cal. Feb. 25, 2013) ............ 15

*Jackson v. Balanced Health Prods.*,
    No. C 08-05584 CW, 2009 U.S. Dist. LEXIS 48848 (N.D. Cal. June 10, 2009) ................. 11

*Jovel v. I-Health, Inc.*,
    No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661 (E.D.N.Y. Sep. 27, 2013) ............. 11

*Kane v. Chobani, Inc.*,
    No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752 (N.D. Cal. July 12, 2013) ............11

*Kasky v. Nike*,
    27 Cal. 4th 939 (2002) ................................................................................................4

*Locklin v. StriVectin Operating Co.*,
    No. 21-cv-07967-VC, 2022 U.S. Dist. LEXIS 52461 (N.D. Cal. Mar. 23, 2022)...............18

*Loomis v. Slendertone Distribution, Inc.*,
    420 F. Supp. 3d 1046 (S.D. Cal. 2019).............................................................................12

*Loop AI Labs, Inc. v. Gatti*,
    No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268 (N.D. Cal. Sep. 2, 2015).............19

*LSH Co. v. Transamerica Life Ins. Co.*,
    No. 2:18-CV-09711-SJO-KS, 2019 U.S. Dist. LEXIS 151847
    (C.D. Cal. Mar. 20, 2019) ...........................................................................................21

*Madani v. Volkswagen Grp. of Am., Inc.*,
    No. 17-cv-07287-HSG, 2019 U.S. Dist. LEXIS 133926 (N.D. Cal. Aug. 8, 2019).............22

*McClellan v. I-Flow Corp.*,
    776 F.3d 1035 (9th Cir. 2015) .....................................................................................13

*Milan v. Clif Bar & Co.*,
    489 F. Supp. 3d 1004 (N.D. Cal. 2020) .........................................................................15

*Miller v. Ghirardelli Chocolate Co.*,
    912 F. Supp. 2d 861 (N.D. Cal. 2012) ...........................................................................16

*Moore v. Mars Petcare US, Inc.*,
    966 F.3d 1007 (9th Cir. 2020) .......................................................................................5

*Moran v. Bondi Sands USA Inc.*,
    No. 21-cv-07961-JSW, 2022 U.S. Dist. LEXIS 79591 (N.D. Cal. Apr. 29, 2022)...............8

*Naeyaert v. Kimberly-Clark Corp.*,
    No. ED CV17-00950 JAK (JPRx), 2018 U.S. Dist. LEXIS 227121
    (C.D. Cal. Sep. 28, 2018)............................................................................................20

*Nationwide Biweekly Admin., Inc. v. Superior Court*,
    462 P.3d 461 (Cal. 2020)............................................................................................20

*Penikila v. Sergeant's Pet Care Prods., LLC*,
    442 F. Supp. 3d 1212 (N.D. Cal. 2020) .........................................................................18

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) .................................................................................10, 11

*Plumley v. Massachusetts*,
    155 U.S. 461 (1894)...................................................................................................14

*Prescott v. Bayer Healthcare LLC*,
    No. 20-cv-00102-NC, 2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020)....... passim

*Riegel v. Medtronic, Inc.*,
   552 U.S. 312 (2008)..................................................................................................8

*Robinson v. Wells Fargo Home Mortg.*,
   No. 16-cv-01619-YGR, 2016 U.S. Dist. LEXIS 152925 (N.D. Cal. 2016) ......................18

*Rojas v. Bosch Solar Energy Corp.*,
   443 F. Supp. 3d 1060 (N.D. Cal. 2020) .........................................................................19

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal.App.4th 221 (2014) .........................................................................................19

*Sagastume v. Psychemedics Corp.*,
   No. CV 20-6624 DSF (GJSx), 2020 U.S. Dist. LEXIS 247754
   (C.D. Cal. Nov. 30, 2020)............................................................................................21

*Samet v. Procter & Gamble Co.*,
   No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432 (N.D. Cal. June 18, 2013)..........12

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
   806 F.2d 1393 (9th Cir. 1986) .....................................................................................22

*Shay v. Apple Inc.*,
   No. 20cv1629-GPC(BLM), 2021 U.S. Dist. LEXIS 4033 (S.D. Cal. Jan. 8, 2021)............21

*Somers v. Beiersdorf, Inc.*,
   467 F. Supp. 3d 934 (S.D. Cal. 2020) ..........................................................................13

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) ..................................................................................19, 20

*Stengel v. Medtronic Inc.*,
   704 F.3d 1224 (9th Cir. 2013) ...............................................................................12, 14

*Summit Estate, Inc. v. United Healthcare Ins. Co.*,
   No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721 (N.D. Cal. Sep. 10, 2020)........20

*Swearingen v. Santa Cruz Nat., Inc.*,
   No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432 (Cal. Aug. 17, 2016) ......................12

*United States v. United Healthcare Ins. Co.*,
   848 F.3d 1161 (9th Cir. 2016) .....................................................................................18

*Vassigh v. Bai Brands LLC*,
   No. 14-cv-05127-HSG, 2015 U.S. Dist. LEXIS 90675 (N.D. Cal. 2015)...........................12

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) .....................................................................................17

*Victor v. R.C. Bigelow, Inc.*,
   No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014)...........16

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................................4, 5, 6, 8

*Wyeth v. Levine*,
     555 U.S. 555 (2009) ............................................................................................7

*Yamasaki v. Zicam LLC*,
     No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494 (N.D. Cal. Oct. 25, 2021) ............16

**Statutes**

21 U.S.C. § 337(a) ............................................................................................10

21 U.S.C. § 343-1(a)(4) ....................................................................................14

21 U.S.C. § 343-1(a)(5) ....................................................................................12

21 U.S.C. § 352(a) ............................................................................................12

21 U.S.C. § 362(a) .........................................................................................7, 12

21 U.S.C. § 379s(a) ............................................................................................7

21 U.S.C. § 379r(a) ............................................................................................7

Cal. Bus. & Prof. Code § 17200 ........................................................................7

Cal. Bus. & Prof. Code § 17205 ......................................................................20

Cal. Bus. & Prof. Code § 17500 ........................................................................7

Cal. Civ. Code § 1770 ........................................................................................7

Cal. Health & Safety Code § 111330 ..............................................................12

Cal. Health & Safety Code § 111730 ..............................................................12

**Rules**

Fed. R. Civ. P. 9(b) ...............................................................................2, 17, 18

**Regulations**

21 C.F.R. § 201.327(g) .............................................................................. passim

21 C.F.R. § 310.545(a)(29)(ii) ........................................................................15

# I.    INTRODUCTION

Defendant sells cosmetic products under the brand names CoverGirl and Rimmel. Intending to profit from consumers' desire to protect their skin from the sun's harmful rays, Defendant developed cosmetic products with SPF protection, and labeled these products with duration claims such as "24 HR FULL COVERAGE SPF 18 OCTINOXATE SUNSCREEN LIQUID FOUNDATION" on the CoverGirl Extreme 3-in-1 Foundation (the "Products"). However, the Products do not and cannot provide 24 hours of SPF protection. The Products' labels are therefore false, deceptive and/or misleading.

The Products' front labels advertise duration claims such as "24 HR" as a standalone callout, and then include a list of advertised benefits, including "SPF," "Full Coverage" and "hydration boost." Plaintiff alleges that a reasonable consumer interprets the duration claims such as "24 HR" to mean that the Product will provide all of the advertised benefits, including the SPF coverage, for the full period of time without the need to reapply. However, two hours after application of the Products, the sunscreen ingredients lose their effectiveness in protecting the skin from ultraviolet ("UV") damage. Therefore, sunscreen must be reapplied every two hours to ensure sun protection. The "24HR" SPF claim is therefore false and misleading.

This Court recently addressed a similar case challenging a "mineral-based" label claim on a sunscreen product and rejected nearly every argument that Defendant raises here. *Prescott v. Bayer Healthcare LLC*, No. 20-cv-00102-NC, 2020 U.S. Dist. LEXIS 136651, at *24 (N.D. Cal. July 31, 2020). Despite this, Defendant does not reference *Prescott* and forges on with failed arguments. Defendant's main argument is that a reasonable consumer could not be deceived by its labels because the back label contains a required drug facts panel that includes the instruction to "reapply every 2 hours." However, that is a fact-based argument that cannot be resolved at the pleading stage. Defendant offers nothing to rebut Plaintiff's allegations that a reasonable consumer viewing the Products' labels would interpret the "24HR" claim to apply to all of the attributes listed on the front label, including the SPF. Compl. ¶ 22. And controlling Ninth Circuit law dictates that a consumer is not expected to read a back label that corrects a front label misrepresentation.

Defendant next argues that Plaintiff's claims are preempted because Defendant's drug facts panel complies with FDA regulations. However, Defendant's use of the drug facts panel, and whether it complies with FDA regulations, is of no moment in this analysis. Plaintiff does not challenge the drug facts panel or argue that it should say more or less. And a proper drug facts panel does not stand for the premise that Defendant can say whatever else it wants on the label, much less include a claim that contradicts the FDA-required instruction to reapply every 2 hours. As such, Plaintiff's claims are not preempted.

Defendant's remaining arguments are the oft-repeated and rarely successful litany of challenges to consumer claims. Plaintiff has standing to seek injunctive relief because she alleges a desire to purchase the Products in the future. She has standing to pursue claims against unpurchased Products because they are substantially similar to the Products she did purchase and the claims she brings. She satisfies the particularity requirements of Rule 9(b) because she sufficiently alleges the "who," "what," "when", "where," and "how" of her claims: Defendant's Products' front label "24HR" and "25HR" claims regarding SPF are false and misleading because the Products provide only 2 hours of sun protection. Further, *Sonner* does not defeat Plaintiff's claims because she has pled that she does not have an adequate remedy at law. And finally, as the Ninth Circuit has held, Plaintiff may plead a separate unjust enrichment claim under California law and is permitted to plead the claim in the alternative. Thus, none of Defendant's arguments have merit and this Court should deny its motion to dismiss.

## II.     BACKGROUND

### A.     The Products.

Defendant sells cosmetics under the brand names CoverGirl and Rimmel that advertise that certain product features, including SPF, will last "24HR" and "25HR". Compl. ¶¶ 20–22. Developed decades ago, the Sun Protection Factor ("SPF") is the most accepted method for evaluating a sunscreen's photo-protective efficacy. While SPF products protect against UV rays, they are fully effective for only two hours, at which point they must be reapplied to provide continued protection from the sun. Compl. ¶ 3. The cosmetic Products include foundations and powders that often wear off throughout the day and need to be reapplied. Products that advertise

that they last 24 or more hours are appealing to consumers because consumers believe they will not have to reapply the products throughout the day. Some Products also include the labeling claim "sweatproof" to further advertise that the Products are long lasting and will not need to be reapplied. However, the Products will not provide SPF protection for over 24 hours. The SPF protection is not "sweatproof" and will last, at most, only 2 hours, meaning a consumer would need to reapply the product every 2 hours to receive the advertised SPF benefit.

Plaintiff alleges that a reasonable consumer expects that the Products provide SPF protection for the number of hours advertised on the label, for example 24 or 25 hours. Compl. ¶ 46. Because the Products do not provide 24 or 25 hours of sun protection, the label claim is false and misleading in violation of state consumer protection statutes and parallel federal regulations.

## B.    Regulatory Framework.

The FDA has promulgated various testing and labeling requirements for nonprescription, over-the-counter ("OTC") sunscreens. *See*, *e.g.*, 21 C.F.R. § 201.327 (labeling and testing requirements for OTC sunscreens). Where a cosmetic product contains sunscreen ingredients, the cosmetic is subject to sunscreen labeling requirements. 21 C.F.R. § 700.35. FDA regulations prohibit any false and misleading claims from appearing on cosmetics and sunscreens. 21 U.S.C. § 362(a) (false and misleading labeling prohibited on cosmetics); 21 CFR 201.327(g) (false and misleading labeling prohibited on sunscreen). FDA regulations also give explicit examples of certain claims deemed misleading, which "include but are not limited to the following: 'Sunblock,' 'sweatproof,' and 'waterproof.'" 21 C.F.R. § 201.327(g). Parallel and identical state regulations also prohibit using false and misleading labeling on cosmetic and sunscreen products. Cal. Health & Safety Code §§ 111330, 111730.

## C.    Drug Facts Panel on Sunscreen.

The FDA includes specific drug facts panel language that manufacturers must include on sunscreens, including cosmetics with sunscreen. Plaintiff does not allege that Defendant has violated these requirements. However, the drug facts panel on Defendant's Products is not visible on the face of the label. It is buried underneath a sticker on the back panel of the Product. This

may be permitted by the regulations, but when a consumer looks at the Product in the store, they will not see the instruction to reapply the Product every 2 hours unless they tear the back label to lift off the sticker and find the appropriate page of the multi-page drug facts label before purchasing. Compl. ¶¶ 38–39. Thus, the FDA-required drug facts panel will not serve to correct the misleading duration claims on the Products' front labels.

## III.   ARGUMENT

### A.   Plaintiff Alleges a Reasonable Consumer Would Be Misled.

Under the FAL, CLRA, and UCL, whether something is misleading is governed by the "reasonable consumer" test, which requires showing "that members of the public are likely to be deceived." *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (citations omitted). "[T]hese laws prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky v. Nike*, 27 Cal. 4th 939, 951 (2002) (citation omitted). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" on a motion to dismiss. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). As in *Gerber*, this is not a "rare" case where what a reasonable consumer would believe is appropriately decided as a matter of law.

Plaintiff alleges that Defendant's labeling of its sunscreen cosmetics is false, misleading and deceptive to consumers. Specifically, the Products list "24HR" and "25HR" with a list of advertised benefits beneath the duration claim. The "24HR" and "25HR" claims appear on the label in isolation in a separate pop out that communicates to consumers that the duration claim applies to all of the advertised benefits. The advertised benefits include "SPF 18" on the CoverGirl Products and "SPF 20" on the Rimmel Products. *See* Compl. ¶ 21. Consumers are attracted to the SPF benefits because SPF can reduce the risk of sunburn, skin cancer, and premature skin aging. *Id.* ¶¶ 30–31.

The Products deceive consumers by advertising that the Products will provide SPF protection for longer than 2 hours. These claims are false. Two hours after application of Products, the sunscreen ingredients lose their effectiveness in protecting the skin from UV

damage. Therefore, the Products must be reapplied every two hours to ensure sun protection. *Id.* ¶ 32. The Products do not provide more than 2 hours of SPF protection, which Defendant does not refute. Thus, the claims are misleading to consumers who rely on the claims when purchasing the Products, believing they will provide, for example, 24 hour protection from the sun.

This Court recently considered nearly every argument that Defendant raises here in a similar sunscreen case. *See Prescott*, 2020 U.S. Dist. LEXIS 136651, at *24. In *Prescott*, plaintiff challenged a front label claim, "mineral-based," on a sunscreen product. *Id.* Plaintiff alleged that the representation was false and misleading because the sunscreen contained chemical ingredients. *Id*. The defendant argued that a reasonable consumer would not understand "mineral-based" to mean only mineral ingredients, and that any ambiguity would be resolved by the back panel ingredient label that complied with FDA regulations and disclosed the chemical ingredients. *Id*. This Court rejected both arguments and held that the Ninth Circuit recently reconfirmed, that if "'a back label ingredients list . . . conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not defeated." *Id.* at *23 (quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020)).

Defendant argues here that its back label drug facts panel shields it from liability because it includes an instruction to reapply the product every 2 hours. Even assuming that the panel complies with the regulations, it does not prevent the front label from being misleading because it "conflicts with, rather than confirms, a front label claim." *Id.* A generic instruction to reapply every two hours does not necessarily correct the reasonable consumers' belief that the Products provide 24 hours of SPF protection—after all, the instruction could be due to other factors. And, even Defendant acknowledges the black letter law that consumers are not "expected to look beyond misleading representations on the front of the box to discover the truth." ECF 15 at 10 (citing *Williams*, 552 F.3d at 939). This has more force here, where consumers must tear open the back label before they purchase the Products to even view the instructions about reapplying every two hours. A consumer is not expected to leaf through a back label instruction that is buried under a sticker and not visible on the face of the label *before purchasing* the Product. *See* Compl. ¶ 38. And, even if a consumer did look at the back label before purchasing, the consumer would

1    see more misleading claims, including that the Product is "SWEATPROOF," which FDA

2    regulations explicitly acknowledge as per se misleading. 21 C.F.R. § 201.327(g); Compl. ¶ 40.

3          Rather than applying this Court's analysis in *Prescott*, Defendant largely relies on a case

4    from the Eastern District of New York that is inapplicable here. ECF 15 at 9 (citing *Engram v.*

5    *GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-2886(EK)(PK), 2021 U.S. Dist.

6    LEXIS 189143, at *5 (E.D.N.Y. Sep. 30, 2021)). First, as evident from the analysis in that case,

7    the Eastern District of New York is not beholden to the Ninth Circuit law that controls here and

8    dictates that consumers are not expected to fact check front label claims by tearing open the back

9    label to read various instructions. *Williams*, 552 F.3d at 939. To the contrary, the *Engram* court

10   relied on Second Circuit precedent to conclude that consumers *are* expected to look at the back

11   panel of a product. *Engram*, 2021 U.S. Dist. LEXIS 189143, at *10–11. The *Engram* court

12   addressed a claim that a Chapstick product with the claim "8 Hour Moisture" alongside an SPF

13   claim was misleading. *Id.* at *2–3. The court concluded that, at most, the combined

14   representations could be ambiguous, and did not rise to the level of misleading. The court then

15   applied Second Circuit law to conclude that where there is ambiguity, the court should resolve

16   that ambiguity by considering the back label drug facts panel. *Id*. at *10–11. This is not the legal

17   standard in this Circuit. The Court is not permitted to resolve an ambiguity in the label against

18   the allegations in the complaint, which must be accepted as true. Rather the question is whether

19   Plaintiff has alleged sufficient facts that it is probable that a reasonable consumer would be

20   misled. *See Williams*, 552 F.3d at 939. Here, she has.

21         Even if Ninth Circuit law were not a significant roadblock to the application of *Engram*,

22   the facts are distinguishable. In *Engram*, the court heavily relied on the image and design of the

23   label to conclude that a reasonable consumer could not be misled. *Engram*, 2021 U.S. Dist.

24   LEXIS 189143, at *11. In *Engram*, the Chapstick label had a pop out of "8 Hour Moisture" with

25   a different color background than the "SPF 15" statement. *Id*. at *3. The *Engram* court concluded

26   that the "8 Hour" claim was sufficiently tied to the "Moisture" claim such that a consumer would

27   understand the "8 Hour" claim to apply only to the "Moisture" claim. *Id*. at *12–13. Here, the

28   "24HR" claim is not distinctly tethered to only one aspect of the Product. Instead, the "24HR"

claim is followed by a list of attributes of the Products, including the SPF protection. *See* Compl. ¶ 21 (displaying photo of Products). Another critical distinction is the placement of the drug facts panel. In *Engram*, the drug facts information was plainly visible on the back label as seen in the photo in the opinion. *Engram*, 2021 U.S. Dist. LEXIS 189143, at *4. Defendant here argues at length that the drug facts panel would cure the misleading nature of the front label claim. However, as Plaintiff alleges, "[the drug facts panel] is buried underneath a sticker on the back panel of the Product. When a consumer looks at the Product in the store, they will not see the instruction to reapply the product every 2 hours unless they tear the back label in order to lift the sticker and find the appropriate page of the multi-page drug facts label." Compl. ¶¶ 38–39. Like in *Prescott*, Defendant's back label instructions, even if FDA-compliant, do not save the front label misrepresentation.

## B.      Plaintiff's Claims Are Not Preempted.

Due to serious federalism concerns, the Supreme Court has commanded that "[i]n all preemption cases," courts must "start with the assumption" that federal law does not preempt state law causes of action. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). As a result, courts must interpret regulatory schemes in a way that avoids preemption where possible. *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005). It is also Defendant's "considerable burden" to overcome this presumption and establish that preemption applies. *De Buono v. Nysa-Ila Med. & Clinical Servs. Fund*, 520 U.S. 806, 814 (1997). Defendant has not met that burden here.

### 1.      Plaintiff's claims are not expressly preempted.

Plaintiff's false advertising claims are not preempted because they impose requirements identical to those found in the federal regulatory scheme. The FDCA expressly preempts only those state laws that "relate[] to the regulation of a drug" or "the labeling or packaging of a cosmetic," that impose requirements that are "different from or in addition to, or that [are] otherwise not identical with, a requirement under this chapter." 21 U.S.C. §§ 379r(a), 379s(a). The California statutes at issue in this case are identical to the provisions of the FDCA. The UCL, CLRA, and FAL all prohibit advertising that is "false or misleading." Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq*.; False Advertising Law, Cal. Bus. & Prof. Code

§§ 17500, *et seq.*; Consumers Legal Remedies Act, Cal. Civ. Code §§ 1770, *et seq.*; Cal. Health & Safety Code §§ 111330, 111730 (prohibiting false and misleading labeling on cosmetics and drugs). So too does the FDCA and its implementing regulations. *See* 21 U.S.C. § 362(a) (false and misleading labeling prohibited on cosmetics); 21 C.F.R. § 201.327(g) (false and misleading labeling prohibited on sunscreen).

In *Prescott*, this Court held that similar claims were not preempted. *Prescott*, 2020 U.S. Dist. LEXIS 136651, at *7–8. It concluded that a suit that requires the removal of an unregulated phrase such as "mineral-based" "does not conflict with the FDCA because FDA regulations do not require or prohibit the use of the phrase 'mineral-based.'" *Id*. at *7. The Court reasoned that because FDA regulations generally prohibit "claims that would be false and/or misleading on sunscreen products" (21 C.F.R. § 201.327(g)), "Plaintiffs' claim that Defendants mislead by calling their sunscreen 'mineral-based' is in line with FDA regulations." *Id.* at *7–8.

This Court relied on the Ninth Circuit's holding in *Astiana*, which similarly provides strong guidance here. *Id.* (applying *Astiana*). In *Astiana*, the plaintiff challenged "all natural" labeling claims on cosmetic products. *Astiana v. Hain Celestial Grp., Inc*., 783 F.3d 753, 758 (9th Cir. 2015). Plaintiff alleged that the "all natural" claim was contradicted by the FDA-required ingredient label on the back panel of the products that revealed that they contained synthetic and artificial ingredients. *Id.* Defendant argued that plaintiff's claims were preempted because the products complied with back panel labeling requirements and the regulations did not require the removal of the "natural" claim. *Id.* at 758. The Ninth Circuit rejected the argument, reasoning that "Astiana is not asking Hain to modify or enhance any aspect of its cosmetics labels that are required by federal law. Rather, she claims deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label." *Id.* at 758 (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.")); *see also Moran v. Bondi Sands USA Inc.*, No. 21-cv-07961-JSW, 2022 U.S. Dist. LEXIS 79591, at *5–7 (N.D. Cal. Apr. 29, 2022) ("reef friendly" claim on sunscreen not required

or prohibited by FDA regulations, therefore plaintiff's claims not preempted); *Fagan v. Neutrogena Corp.*, No. 5:13-CV-01316-SVW-OP, 2014 U.S. Dist. LEXIS 2795, at *2 (C.D. Cal. Jan. 8, 2014) ("[I]f the language in the [products' principal display panels] is misleading, as the [complaint] alleges, then state law liability based on the product labels merely creates a damages remedy for violation of state law requirements that 'parallel, rather than add to, federal requirements,' and hence are not preempted.") (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008))).

Plaintiff's claims here are similarly not preempted. Contrary to Defendant's characterization, Plaintiff does not ask Defendant to do more or less than it is required to do by law, and Defendant's compliance with the drug facts regulations does not shield it from liability for its misleading front label claims. Plaintiff does not seek to add a burden that, for example, requires more on the drug facts panel. Nor would a requirement to remove the "24HR" claim be inconsistent with the federal requirement to direct consumers to reapply every 2 hours or the prohibition on false and misleading labeling. Requiring Defendant to "remove these allegedly misleading advertising statements from its product labels [ ] does not run afoul of the FDCA, which prohibits 'requirement[s]' that are 'different from,' 'in addition to,' or 'not identical with' federal rules." *Astiana*, 783 F.3d at 758.

Defendant argues that Plaintiff's claims are expressly preempted because the Products' drug facts panel complies with FDA requirements, and therefore, "Plaintiff's Complaint seeks to require Defendant to comply with requirements that are different from or in addition to those required by the FDA." ECF 15 at 13. However, Plaintiff's claims have nothing to do with the drug facts panel and instead relate to the duration claim on the front label. Defendant cannot use back panel compliance as a shield for a front label claim that directly contradicts what the regulations require it to say on the back, i.e., that the Products' SPF lasts only 2 hours, not 24 hours. That is precisely what the Ninth Circuit determined in *Astiana*, 783 F.3d at 758.

The case that Defendant cites does not support preemption here. ECF 15 at 11–12 (discussing *Eckler*). In *Eckler v. Neutrogena Corp.*, 238 Cal. App. 4th 433 (Cal. Ct. App. 2015), the California Court of Appeal considered two separate actions brought by plaintiffs Engel and

Eckler. Engel challenged "sunblock," "waterproof," and "sweatproof" claims on sunscreen, attempting to retroactively apply FDA regulations. Engel's claims were unique in that the FDA had recently implemented the regulation that prohibits certain claims such as "waterproof," and included a compliance date. *Id.* at 455. Engel argued that the labels that included the "waterproof" claims *before* the compliance date were misleading, but the court rejected the argument because before the compliance date, the FDA had *explicitly declined* to prohibit the terms. *Id.* at 456. The Engel preemption analysis offers little guidance here where the FDA has not explicitly declined to prohibit the "24HR" claims at issue. [1]

The California court also found that plaintiff Eckler's claims were preempted. Eckler challenged sunscreen product labels that claimed to have SPF values greater than 50. Eckler did not challenge the labels as false, but instead argued they would mislead consumers into believing SPF greater than 50 had additional "clinical benefits" compared to products with SPF 50, when they do not. The court found these claims were preempted because FDA regulations authorized manufacturers to state the SPF factor so long as they comply with specific testing measures. *Id.* at 443–44, 459. Thus, the court concluded that the claims sought to impose requirements in addition to those of federal law. *Id.* at 458. Unlike Eckler's claims, Plaintiff here *does* allege the claim that the Products provide 24 hours of SPF protection is false, and FDA does not authorize a manufacturer to make a "24HR" claim, which Defendant does not refute.

## 2.    Plaintiff's claims are not impliedly preempted under *Buckman*.

In addition to express preemption, Defendant argues that Plaintiff's claims are impliedly preempted under *Buckman Co. v. Plaintiffs' Legal Comm*., 531 U.S. 341, 353 (2001). ECF 15 at 14–15. *Buckman* stands for a simple rule: the FDCA impliedly preempts any state law that attempts to privately enforce the provisions of the FDCA itself. This doctrine stems from 21 U.S.C. § 337(a), which provides that "all proceedings for the enforcement or to restrain violations of [the Act] shall be by and in the name of the United States," as well as the numerous

---

[1] Defendant cites FDA legislative history for the requirement to include a drug facts panel for cosmetic products with sunscreen ingredients. ECF 15 at 14. The FDA decision to require the drug facts panel on sunscreen cosmetics does not amount to an authorization to include 24HR SPF claims on the front label.

provisions that give the FDA the tools to enforce the act itself. *Id.* As the Ninth Circuit has recognized, the combination of express and implied preemption leaves a "narrow gap" through which a mislabeling complaint must pass. "The plaintiff must be suing for conduct that violates the FDCA (or else his claim is expressly preempted []), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*)." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013). Plaintiff easily passes through that gap here.

### a. *Buckman* does not apply to false advertising claims.

As an initial matter, *Buckman* is inapplicable because Plaintiff does not seek to privately enforce the FDCA, but to enforce California's independent prohibitions on false and misleading advertising that parallel FDCA regulations. Courts have long recognized that "traditional claims of consumer misrepresentation [are] not an attempt to enforce the FDCA's labeling requirements." *Jovel v. I-Health, Inc.*, No. 12-CV-5614 (JG), 2013 U.S. Dist. LEXIS 139661, at *14 (E.D.N.Y. Sep. 27, 2013); *see also Kane v. Chobani, Inc.*, No. 12-CV-02425-LHK, 2013 U.S. Dist. LEXIS 98752, at *49–50 (N.D. Cal. July 12, 2013) (holding that "Plaintiff's FAL, CLRA, and UCL fraud and unfair prong claims . . . are not impliedly preempted"); *Jackson v. Balanced Health Prods.*, No. C 08-05584 CW, 2009 U.S. Dist. LEXIS 48848, at *11 (N.D. Cal. June 10, 2009) (rejecting application of *Buckman* preemption to plaintiffs' claims that a dietary supplement was misleadingly advertised and that such claims were only attempts to enforce the FDCA). Although these types of claims relate to "the products' labeling and may touch on an area regulated by the FDA, consumer protection claims founded on [the label's] falsity are not preempted." *Jovel*, 2013 U.S. Dist. LEXIS 139661, at *15. This is because "[t]he gravamen of these claims" is that the defendant's labels "are likely to deceive reasonable consumers. Thus, with respect to these claims, Plaintiff is not 'suing *because* Defendant's labeling violates the FDCA,' but rather because Defendant's labeling is allegedly deceptive and misleading in

violation of California law." *Kane*, 2013 U.S. Dist. LEXIS 98752 at *50 (quoting *Perez*, 711 F.3d at 1120; alterations omitted).[2]

Defendant contends that Plaintiff is attempting to enforce the FDCA because "Plaintiff refers to, relies on, and cites to the FDCA and the FDA throughout the complaint, detailing sections regarding the regulatory framework regarding sunscreen products." ECF 15 at 15. Yet, Plaintiff explicitly disclaims any "causes of action under the FDCA and regulations promulgated thereunder by the FDA." Compl. ¶ 69. And, as the Ninth Circuit recognizes, references to the FDCA regulations are by necessity—Plaintiff *must* show that Defendant's conduct "violates the FDCA," to escape express preemption, i.e., to show that the state and federal law are "identical." *Perez*, 711 F.3d at 1120. It would be perverse if avoiding express preemption automatically subjected a plaintiff to implied preemption. If Defendant were correct, then *no claim* for false advertising in the food labeling context could ever escape some form of preemption, which is clearly not the law. Instead, as the Ninth Circuit has expressly held, a state law claim is not preempted where it "rests on a state-law duty that parallels a federal-law duty under the [FDCA]." *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (*en banc*). That is precisely the circumstance here. Plaintiff's false advertising claims are based on state law duties to avoid misleading consumers; these duties are entirely independent of the FDCA, although they do ultimately impose the same requirements as those within the federal regulatory scheme. As a result, Plaintiff's claims are neither impliedly nor expressly preempted.

### b.   *Buckman* is not as broad as Defendant asserts.

Even if a *Buckman* analysis were appropriate here because Plaintiff's complaint references the Sherman Law,[3] the Defendant's application of *Buckman* is incorrect. The vast majority of "courts in this District . . . routinely reject the argument that the Court's reasoning in

---

[2] Judge Koh ultimately vacated the *Kane* decision, but for reasons unrelated to the preemption decision. The rationale of the preemption ruling remains sound and applicable here.

[3] Typically, courts perform a *Buckman* analysis in relation to the Sherman Law where a plaintiff uses the Sherman Law as a predicate for a UCL unlawful prong claim. *See, infra* n. 3. Here, Plaintiff's claims here rest upon independent violations of California's prohibitions on false and deceptive advertising contained in the FAL, UCL, and CLRA. To the extent the Sherman Law or FDCA are invoked, it is only the prohibition on false and misleading advertising found therein.

*Buckman* justifies preemption of [] claims under the Sherman Law." *Vassigh v. Bai Brands LLC*, 2015 U.S. Dist. LEXIS 90675, *12–13 (N.D. Cal. 2015) (collecting cases).[4] They do so because the FDCA's preemption provision expressly preserves parallel state law claims (21 U.S.C. § 343-1(a)(5)), and California state law is identical in its prohibition of false and misleading claims on drug and cosmetic labeling. Cal. Health & Safety Code § 111330; *see also* Cal. Health & Safety Code § 111730; 21 U.S.C. § 362(a) (false and misleading labeling prohibited on cosmetics); 21 U.S.C. § 352(a) (false and misleading labeling prohibited on drugs and devices); 21 C.F.R. § 201.327(g) (false and misleading labeling prohibited on sunscreen).

Defendant's application of *Buckman* is too broad. The plaintiff in *Buckman* sued based on alleged misrepresentations that a medical device consultant made to the FDA in the premarket approval process for a medical device that allegedly injured plaintiff. 531 U.S. at 343–44. The plaintiff relied on a provision of the FDCA, the Medical Device Amendments ("MDA") that requires medical device manufacturers to receive premarket approval for their devices and to disclose particular facts to the FDA, during which the defendant allegedly made misrepresentations. *Id.* at 344–47. Defendant was not the manufacturer, but instead a third party consultant the manufacturer hired to assist in the premarket approval process. State law created no actionable duties from the consultant to the plaintiff. So instead, the plaintiff argued that "but for" the consultant's violation of its FDCA reporting duties to the FDA, the devices would not have received approval, and would not have ultimately injured plaintiff. *Id.* at 343. Critically, that "fraud-on-the-FDA" claim ***depended*** entirely upon the existence of the federal regulatory scheme at issue. Were there no FDCA, MDA, or FDA, the plaintiff's claim in that case ***could not have existed*** as there were no parallel duties to report facts to the FDA under state law nor could the state independently create such duties. As a result, almost all cases finding preemption

---

[4] *See also Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1074 (S.D. Cal. 2019); *De Keczer v. Tetley USA, Inc.*, No. 5:12-CV-02409-EJD, 2014 U.S. Dist. LEXIS 121465, at *16–17 (N.D. Cal. Aug. 28, 2014); *Swearingen v. Santa Cruz Nat., Inc.*, No. 13-cv-04291-SI, 2016 U.S. Dist. LEXIS 109432, at *7 (N.D. Cal. Aug. 17, 2016); *Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 929 (N.D. Cal. 2014); *Samet v. Procter & Gamble Co.*, No. 5:12-CV-01891 PSG, 2013 U.S. Dist. LEXIS 86432, at *6 (N.D. Cal. June 18, 2013); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 954–58 (N.D. Cal. 2013).

under *Buckman* do so in the context of claims relating to the "inherently federal" pre-market approval process. *See*, *e.g.*, *Somers v. Beiersdorf, Inc.*, 467 F. Supp. 3d 934, 937 (S.D. Cal. 2020) ("Plaintiff does not raise any separate or distinct state law drug process that should have been followed; she refers only to the FDA NDA [premarket approval] process."); *id.* ("although food labeling is undoubtedly 'within the states' historic police powers,' the same cannot be said for new drug approval, a process that is uniquely federal.") (internal citations omitted); *Borchenko v. L'Oreal USA, Inc.*, 389 F. Supp. 3d 769, 773 (C.D. Cal. 2019) (finding preemption where plaintiff argued that a cosmetic was a drug that had not undergone necessary FDA premarket approval).

But, as the Ninth Circuit has long-recognized, "*Buckman* . . . left the door open to state-law claims 'parallel to federal requirements.'" *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1040 (9th Cir. 2015); *see also Gaeta v. Perrigo Pharmaceuticals Co.*, 630 F. 3d 1225, 1234 (9th Cir. 2011) (finding that claims were "not preempted under *Buckman*" "[b]ecause these claims are based on Perrigo's alleged violation of its state-law duties rather than an alleged violation of the FDCA itself"). This is because The FDCA's preemption provision expressly allows states to pass laws that create requirements "identical" to the federal food labeling scheme. 21 U.S.C. § 343-1(a)(4). In other words, "[s]tates are generally free to enact statutes that parallel the requirements of federal law and to provide for private enforcement of those parallel obligations." *Vassigh*, 2015 U.S. Dist. LEXIS 90675 at *14 (citing *Stengel*, 704 F.3d at 1233); *see Clancy v. Bromley Tea Co.*, 308 F.R.D. 564, 573 (N.D. Cal. 2013) ("Congress specifically anticipated states enacting their own identical laws."). A state's authority to regulate false and misleading labeling is well settled. *See Plumley v. Massachusetts*, 155 U.S. 461, 472 (1894) ("If there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which . . . it is the protection of the people against fraud and deception in the sale of [] products.").

Defendant concedes that "Plaintiff's FAL, UCL, and CLRA claims are based entirely on her claim that Coty violated the FDCA and the ***parallel California Sherman law*** by advertising that the Products provide SPF production for 24 or 25 hours and/or that they include the term

'sweatproof' in the Drug Facts label." ECF 15 at 15 (emphasis added). To the extent Defendant argues that the claim based on "sweatproof" labeling is solely an FDA regulation, it is not. Instead, the FDA prohibits false and misleading labeling on sunscreen and in the same regulation explains that a claim of "sweatproof" would be considered misleading. 21 C.F.R. § 201.327(g). Thus, it is under the same umbrella of prohibitions on misleading claims, and the state and federal laws are directly parallel.

### C.    Plaintiff Has Standing to Seek Injunctive Relief.

Plaintiff alleges that she continues to desire to purchase Defendant's Products, would likely purchase them again if they were reformulated and/or relabeled without the misleading SPF duration claims, and that she regularly visits stores where Defendant's products are sold. Compl. ¶ 60. These allegations suffice to confer standing on Plaintiff, as confirmed by the Ninth Circuit in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 966–72 (9th Cir. 2018) (plaintiff properly alleged a "threat of imminent or actual harm by not being able to rely on [the] labels in the future" that is "sufficient to confer standing to seek injunctive relief."); *see also Prescott*, 2020 U.S. Dist. LEXIS 136651, at *16; *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, 2022 U.S. Dist. LEXIS 84477, at *30–31 (N.D. Cal. May 10, 2022) ("[But 'reformulated' may mean that the Products are relabeled, not that the ingredient composition is altered. In this light, Brown's allegation satisfies *Davidson*'s first example of future harm.").

Defendant argues that Plaintiff lacks standing to seek an injunction "because Plaintiff cannot be deceived by the allegedly misleading labeling again" and that she does not face the risk of imminent harm because she does not plead the "risk of physical injury." ECF 15 at 16–17.

As to the first, the Ninth Circuit has held that a "previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false." *Davidson*, 889 F.3d at 969. That past knowledge does not change the informational injury a plaintiff plausibly suffers when confronting future false labels while shopping. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (holding that plaintiff's ability to check the amount of added sugar

on the NFP did not preclude the possibility that the plaintiff could be misled by statements on the front label). This is true here. No one knows what future science will offer, and there is the possibility that a future formula could offer more than 2 hours of sun protection. The FDA provides an avenue for manufacturers to present evidence that would allow for such a claim under the drug preapproval process, and Plaintiff has no way of knowing whether that has happened or not on future labels. 21 C.F.R. § 310.545(a)(29)(ii).

As to Defendant's second argument that there must be risk of "physical injury," this is a consumer protection class action, not a personal injury case. "Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action." *Davidson*, 889 F.3d at 965; *Ivie v. Kraft Foods Glob., Inc.*, No. C-12-02554-RMW, 2013 U.S. Dist. LEXIS 25615, at *10–11 (N.D. Cal. Feb. 25, 2013) (economic injury sufficient for Article III standing under UCL and FAL). To plead an economic injury, "a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price." *Davidson*, 889 F.3d at 966; *see also Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1125 (N.D. Cal. 2010). Plaintiff has done just that; she alleges that she "paid more money for the Products than she would have paid for other or a similar cosmetic product that was not unlawfully and misleadingly labeled with the 24 hour SPF claims." Compl. ¶ 58. Plaintiff has therefore alleged an economic injury in the form of a price premium paid. Compl. ¶¶ 50, 85, 105, 113.

### D.      Plaintiff Has Standing to Sue About Products She Did Not Purchase.

Defendant argues that Plaintiff lacks standing as to the products they did not purchase. ECF 15 at 17–18. Many courts reject consideration of the issue at the motion to dismiss stage. The specific products that may be included in a class goes to typicality at class certification, not standing because the named plaintiffs have standing to challenge deceptive labeling practices by virtue of the products they did purchase. *See Dailey v. A&W Concentrate Co.*, 519 F.Supp.3d 668, 673 (N.D. Cal. Feb. 16, 2021); *Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *24 (N.D. Cal. Mar. 14, 2014); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C-11-2910-EMC, 2012 U.S. Dist. LEXIS 101371, at *35–38 (N.D. Cal. July

20, 2012). Plaintiff contends that deferring until class certification is the more appropriate course of action so that the "substantial similarity" question can be answered based on evidence developed during discovery, rather than an allegation.

The vast majority of those that consider it at this stage apply the "substantially similar" test, which allows a named plaintiff to "assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Prescott*, 2020 U.S. Dist. LEXIS 136651, at *13 (finding plaintiff had standing to pursue unpurchased products). Courts have found substantial similarity where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar. *See Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494, at *6 (N.D. Cal. Oct. 25, 2021) (citing *Ang v. Bimbo Bakeries USA, Inc.*, No. 13-cv-01196-WHO, 2014 U.S. Dist. LEXIS 34443 (N.D. Cal. Mar. 13, 2014)).

Plaintiff easily satisfies that standard here for purposes of a motion to dismiss. She alleges the same legal claims with respect to all products—i.e., that Coty deceptively labels its Products with "24HR" and "25HR" SPF claims when the Products provide only 2 hours of SPF protection—and she alleges that the Products are substantially similar in all important respects to this claim—i.e., that they all are labeled with duration claims that overstate the SPF protection the Products will provide. Compl. ¶¶ 21–22. Resolving "the asserted claims will be identical between the purchased and unpurchased products." *Ang*, 2014 U.S. Dist. LEXIS 34443, at *28.

### E.    Plaintiff Satisfies Rule 9(b).

Plaintiff has adequately pleaded "the who, what, when, where, and how of the misconduct charged," which is all Rule 9(b) requires. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). The "who" is Defendant. The "when" is the date of each purchase between 2018-2022, including a purchase on March 30, 2022. Compl. ¶ 55. The "where" is on the Products' labels (Compl. ¶¶ 20–22); and the "how" is by using the duration misrepresentations such as "24HR" to deceive consumers into believing

the Products provide 24 hours of SPF sun protection in order to sell products at a higher price at the expense of Plaintiff and other similarly situated individuals (Compl. ¶¶ 19, 40, 41, 51–52, 59). Numerous courts have found similar allegations sufficiently detailed. *See, e.g.*, *In re ConAgra Foods, Inc.*, 908 F.Supp.2d 1090, 1099 (C.D. Cal. 2012) ("[A] plaintiff complies with Rule 9(b) if he or she asserts that allegedly misleading statements appeared on the label or packing of a consumer product."); *Bruton v. Gerber Products Co.*, No. 12-cv-02412-LHK, 2014 U.S. Dist. LEXIS 5493, at *47 (N.D. Cal. Jan. 15, 2014) (same); *Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 U.S. Dist. LEXIS 57348, at *14 (N.D. Cal. May 26, 2011) (describing allegations in similar terms); *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1192 (N.D. Cal. 2014) (same); *see also Davidson*, 889 F.3d at 964–65 (holding the plaintiff satisfied Rule 9(b) by adequately explaining her theory as to why the term "flushable" was false). These allegations are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (internal quotation marks and citation omitted). Rule 9(b) "does not require absolute particularity or a recital of the evidence" and "a complaint need not . . . describe in detail a single specific transaction." *Id.* (quotation marks and citations omitted); *see also Davidson*, 889 F.3d at 964–65 (holding the plaintiff satisfied Rule 9(b) by adequately explaining her theory as to why the term "flushable" was false).

Defendant's arguments about Rule 9(b) are muddled. Defendant argues that Plaintiff has failed to identify the Products with sufficient particularity (ECF 15 at 19–20), but the Products are identified in the Complaint, both explicitly by brand and broadly to capture those Products that Plaintiff's investigation has not yet revealed. Compl. ¶ 20. Defendant then argues that Plaintiff cannot challenge Product labels that she did not see or purchase (ECF 15 at 19–20), but those arguments are addressed above. Plaintiff can and does challenge unpurchased Products because they are substantially similar. Defendant complains that Plaintiff has not pled that she relied on Defendant's website, but the website claims are not at issue. Website statements are

included in the Complaint to reveal Defendant's intent that consumers understand that the "24HR" claim on the products front labels applies to SPF. Compl. ¶ 43.

**F.      Plaintiff States a Claim for Unjust Enrichment.**

Defendant challenges Plaintiff's unjust enrichment claim with the almost invariably rejected argument that there is "no cause of action in California for unjust enrichment." ECF 15 at 22. It is well-established that "standalone" unjust enrichment claims are permissible in California under certain circumstances. *See Penikila v. Sergeant's Pet Care Prods., LLC*, 442 F. Supp. 3d 1212, 1215 (N.D. Cal. 2020) (denying motion to dismiss plaintiff's claim for unjust enrichment when presented with the same argument); *see also Bruton v. Gerber Products Co.*, 703 F. Appx. 468, 470 (9th Cir. 2017) (noting that the California Supreme Court has allowed independent claims for unjust enrichment to proceed); *Robinson v. Wells Fargo Home Mortg.*, No. 16-cv-01619-YGR, 2016 U.S. Dist. LEXIS 152925, at *17 (N.D. Cal. 2016). Even where courts have found no standalone claim for "unjust enrichment" in California, they still "construe the cause of action as a quasi-contract claim seeking restitution." *Locklin v. StriVectin Operating Co.*, No. 21-cv-07967-VC, 2022 U.S. Dist. LEXIS 52461, at *7–8 (N.D. Cal. Mar. 23, 2022) (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014)); *Astiana*, 783 F. 3d at 762 (stating that courts can construct "unjust enrichment" claims as a quasi-contract claim seeking restitution).

Further, a plaintiff is "permitted to plead an unjust enrichment claim in the alternative." *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG, 2015 U.S. Dist. LEXIS 117268, at *23 (N.D. Cal. Sep. 2, 2015); *see also In re Facebook, Inc.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (holding "plaintiffs are permitted to plead claims for breach of contract and unjust enrichment in the alternative."); *In re S.C. Johnson & Son, Inc.*, No. 20-cv-03184-HSG, 2021 U.S. Dist. LEXIS 141101, at *26–27 (N.D. Cal. July 28, 2021) ("Therefore, at this stage, the Court will construe the cause of action as a quasi-contract claim seeking restitution, as it has done in prior cases"); *Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1080 (N.D. Cal. 2020) (noting that "this Court has held that a claim for unjust enrichment may be asserted under California law, and that such a claim is not subject to dismissal at the pleading stage even if duplicative of other

claims"). Otherwise stated, a claim for unjust enrichment that is, as here, pleaded in the alternative, may be duplicative. The Ninth Circuit has, in fact, specifically held that a district court errs when it dismisses an "unjust enrichment" claim as "duplicative of or superfluous of" other claims. *Astiana*, 783 F.3d at 762–63.

### G. Plaintiff Adequately Pleads that She Lacks an Adequate Remedy at Law.

Relying on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Defendant argues that Plaintiff's claims for equitable restitution under the CLRA, FAL, and UCL must be dismissed because Plaintiff's "Complaint is devoid of any factual support for any proposition that Plaintiff lacks an adequate legal remedy." ECF 15 at 21. This is false. For one, Plaintiff seeks damages under the CLRA, not equitable restitution. Second, Defendant misapplies *Sonner*. And third, Defendant ignores Plaintiff's detailed allegations providing specific reasons why she does not have an adequate remedy at law.

Defendant's reliance on *Sonner* is misplaced. In that case, after four years of litigation and on the eve of trial, the plaintiffs voluntarily dismissed their only legal claim (for deception under the CLRA) in an attempt to secure a bench trial, and avoid a jury trial, on their fraudulent-prong-UCL claim, which the court held the plaintiffs could not do. *Id.* at 837–38. The CLRA claim had already survived a motion for summary judgment, and the plaintiffs had never alleged that they lacked an adequate legal remedy in their complaint. *Id.* at 844. The Court held that federal law governed the question of whether a plaintiff must lack an adequate remedy at law before a court may issue injunctive relief, and that plaintiff had failed to do so. *Id.*

This case is also in a much different posture than *Sonner*, where the plaintiff's legal claim had already survived summary judgment and the plaintiff simply chose to dismiss it to secure a perceived advantage. It is currently unknowable whether any of Plaintiff's legal claims will survive summary judgment or provide any remedy at all. *See In re JUUL*, No. 19-md-02913-WHO, 2020 U.S. Dist. LEXIS 197766, at *225–27 (N.D. Cal. Oct. 23, 2020) ("The facts of *Sonner* —where the plaintiff on the eve of trial sought to secure a bench trial under the UCL by foregoing CLRA damages claims that had to be tried to a jury—are inapposite considering the

allegations and the posture of the CAC.").[5] It would be bitterly ironic if the *possible* availability of a common law fraud claim automatically precluded UCL and FAL claims from the outset of a lawsuit because "[t]he UCL and the FAL were enacted for the specific purpose of creating new rights and remedies that were not available at common law." *See Nationwide Biweekly Admin., Inc. v. Superior Court*, 462 P.3d 461, 485–87 (Cal. 2020) (statutes broaden the types of practices that can be found unfair and that they eliminate a number of elements required in common law actions for fraud); *see also Summit Estate, Inc. v. United Healthcare Ins. Co.*, No. 4:19-cv-06724 YGR, 2020 U.S. Dist. LEXIS 166721, at *25 (N.D. Cal. Sep. 10, 2020) (allowing an equitable claim under the UCL in the alternative to claims for legal remedies "is consistent with the broad remedial purpose of the UCL" and with § 17205 of the UCL, which provides that UCL remedies are "cumulative" to other available remedies).

"Putting aside *Sonner*'s unique procedural posture, the case did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories." *See Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *14 n.5 (N.D. Cal. Mar. 10, 2022); s*ee also Sagastume v. Psychemedics Corp.*, No. CV 20-6624, 2020 U.S. Dist. LEXIS 247754, at *21 (C.D. Cal. Nov. 30, 2020); *Shay v. Apple Inc*., No. 20cv1629, 2021 U.S. Dist. LEXIS 4033, at *23 (S.D. Cal. Jan. 8, 2021) ("Plaintiff may plead in the alternative but she must also allege she lacks an adequate legal remedy."); *In re Juul Labs, Inc.*, 2020 U.S. Dist. LEXIS 197766, at *225–226 n.67 (granting plaintiffs "leave to amend to expressly allege that their remedies at law are inadequate and to support their claim to equitable restitution under the UCL and FAL"). Here, Plaintiff pleads that her UCL unlawful claims are not coextensive with their legal claims. Compl. ¶¶ 107–08. Thus, Plaintiff does not have an adequate remedy at law for her UCL unlawful prong claims because

---

[5] There are significant differences between Plaintiff's equitable and legal claims. "A claim under the fraudulent prong of the UCL does not require a showing that the statement was false, that the party who made it knew that it was false or that the plaintiff reasonably relied on the statement." *Naeyaert v. Kimberly-Clark Corp.*, No. ED CV17-00950, 2018 U.S. Dist. LEXIS 227121, at *16 (C.D. Cal. Sep. 28, 2018). Given these differences, a common law claim for fraud is significantly less certain to provide a remedy than a UCL claim. *See Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937) ("A remedy at law does not exclude one in equity unless it is equally prompt and certain and in other ways efficient.").

she has no legal corollary, and Plaintiff may plead her unlawful theories in the alternative. *See Elgindy v. AGA Serv. Co.*, No. 20-cv-06304-JST, 2021 U.S. Dist. LEXIS 61269, at *46 (N.D. Cal. Mar. 29, 2021) (plaintiff entitled to pursue equitable relief for unlawful UCL claim).

Further, damages under the fraud claim would not provide an adequate remedy for Defendant's continued misconduct in the future. Compl. ¶ 108; *see also Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-cv-05452-JST, 2018 U.S. Dist. LEXIS 83553, at *19 (N.D. Cal. May 17, 2018) (allegations of a risk of future harm supported plaintiff's request for equitable injunctive relief); *Gross v. Vilore Foods Co.*, No. 20cv0894 DMS (JLB), 2020 U.S. Dist. LEXIS 200913, at *9–10 (S.D. Cal. Oct. 28, 2020) (rejecting an argument that plaintiffs had an adequate remedy at law and concluding they could maintain UCL and FAL claims for injunctive relief); *LSH Co. v. Transamerica Life Ins. Co.*, 2019 U.S. Dist. LEXIS 151847, at *38–39 (C.D. Cal. Mar. 20, 2019) (plaintiffs did not have an adequate remedy at law where damages would not prevent continued wrongful conduct by the insurer).

Defendant's argument ignores the extensive, detailed allegations that Plaintiff has no adequate remedy at law because the elements necessary to prove a UCL fraudulent prong claim are not identical to the elements of a CLRA claim or common law fraud claim, which provide legal damages. *See* Compl. ¶¶ 75, 86, 88, 107, 108, 110, 114 (alleging the Plaintiff and the class may have no adequate remedy at law to ensure Defendant does not mislead consumers in the future in the same way). "[T]he CLRA and UCL's remedies are not exclusive, but are in addition to any other procedures or remedies for any violation or conduct provided for in any other law." *Madani v. Volkswagen Grp. of Am., Inc.*, 2019 U.S. Dist. LEXIS 133926, at *26 (N.D. Cal. Aug. 8, 2019) (citation omitted). "[A]t the pleading stage, theories of equitable remedies are not barred by a plaintiff adequately pleading theories supporting monetary relief." *Id.* at *27.

## IV.   PLAINTIFF REQUESTS LEAVE TO AMEND IF NECESSARY

If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the Court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Indeed, leave to amend is only properly denied "where

1   the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir.

2   1992). Should this Court find the Complaint insufficient, Plaintiff requests leave to amend.

3   **V.    CONCLUSION**

4          For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's

5   Motion to Dismiss or, in the alternative, grant Plaintiff leave to amend the Complaint.

7          Dated: December 23, 2022

                                              **GUTRIDE SAFIER LLP**

9                                             *s/ Hayley A. Reynolds*
10                                            Seth A. Safier (State Bar No. 197427)
                                               seth@gutridesafier.com
11                                            Marie A. McCrary (State Bar No. 262670)
                                               marie@gutridesafier.com
12                                            Hayley A. Reynolds (State Bar No. 306427)
                                               hayley@gutridesafier.com
13                                            100 Pine Street, Suite 1250
                                              San Francisco, CA 94111
14                                            Telephone: (415) 639-9090
                                              Facsimile:  (415) 449-6469

15                                            *Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS – CASE NO. 5:22-CV-05291-NC