ERIK K. SWANHOLT, CA Bar No. 198042
   eswanholt@foley.com
ANUM AMIN, CA Bar No. 319662
   aamin@foley.com
**FOLEY & LARDNER LLP**
555 SOUTH FLOWER STREET, SUITE 3300
LOS ANGELES, CA 90071-2418
TELEPHONE: 213.972.4500
FACSIMILE:  213.486.0065

Attorneys for Defendant COTY INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DISTRICT

| | |
|---|---|
| ANTOINETTE MEZA, as an individual, on behalf of herself, the general public and those similarly situated,<br><br>                Plaintiff,<br><br>vs.<br><br>COTY, INC.,<br><br>                Defendants. | Case No. 5:22-cv-05291-NC<br><br>**COTY INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**<br><br>Complaint Filed: September 16, 2022<br><br>Magistrate Judge:   Hon. Nathanael M. Cousins |

**TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................2

II. ARGUMENT ..............................................................................................................6

    A.    THE PRODUCTS' LABELS DO NOT MISLEAD REASONABLE CONSUMERS ..................................................................................................6

    B.    FDCA PREEMPTS PLAINTIFF'S CLAIMS ............................................11

    C.    PLAINTIFF LACKS STANDING TO OBTAIN INJUNCTIVE RELIEF ..................13

    D.    PLAINTIFF'S CONSUMER PROTECTION CLAIMS FAIL UNDER RULE 9(B) ..................................................................................................14

    E.    PLAINTIFF CANNOT RECOVER IN EQUITY ........................................16

    F.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM FAILS AS A MATTER OF LAW ..................................................................................................16

    G.    LEAVE TO AMEND SHOULD NOT BE GRANTED ..................................16

III. CONCLUSION ........................................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Buckman Co. v. Plaintiffs' Legal Comm.*,
 531 U.S. 341 (2001) ..................................................................................................... 13

*Carter v. Novartis Consumer Health, Inc.*,
 582 F. Supp. 2d 1271 (C.D. Cal. 2008) ........................................................................ 11

*Cordes v. Boulder Brands USA, Inc.*,
 No. CV 18-6534 PSG (JCX), 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .............. 14

*Davidson v. Kimberly-Clark Corp.*,
 889 F.3d 956 (9th Cir. 2018) ........................................................................................ 13

*Doe v. United States*,
 58 F.3d 494 (9th Cir. 1995) .......................................................................................... 16

*Engram v. GSK Consumer Healthcare Holdings (US) Inc.*
 No. 19-CV-2886(EK)(PK), 2021 WL 4502439 (E.D.N.Y. Sept. 30, 2021) .......... 10, 11

*Fernandez v. Atkins Nutritionals, Inc.*,
 No. 317CV01628GPCWVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) ................... 14

*Gisvold v. Merck & Co.*,
 62 F. Supp. 3d 1198 (S.D. Cal. 2014) .......................................................................... 11

*Haskell v. Time, Inc.*,
 857 F. Supp. 1392 (E.D. Cal. 1994) ............................................................................... 6

*IntegrityMessageBoards.com v. Facebook, Inc.*,
 No. 18-CV-05286-PJH, 2020 WL 6544411 (N.D. Cal. Nov. 6, 2020) ....................... 16

*Jackson v. Gen. Mills, Inc.*,
 No. 18CV2634-LAB (BGS), 2020 WL 5106652 (S.D. Cal. Aug. 28, 2020) ............. 14

*Kearns v. Ford Motor Co.*,
 567 F. 3d 1120 (9th Cir. 2009) ..................................................................................... 15

*Low v. LinkedIn Corp.*,
 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ....................................................................... 16

*Moore v. Kayport Package Exp., Inc.*,
 885 F. 2d 531 (9th Cir. 1989) ....................................................................................... 15

*Moore v. Trader Joe's Co.*,
 4 F.4th 874 (9th Cir. 2021) ............................................................................. 6, 7, 8, 9

*Nexus Pharm., Inc. v. Central Admixture Pharm. Servs., Inc.*,
    48 F.4th 1040 (9th Cir. 2022) ................................................................................................13

*Perez v. Nidek Co.*,
    711 F.3d 1109 (9th Cir. 2013) ................................................................................................13

*Prescott v. Bayer Healthcare LLC*,
    No. 20-cv-00102-NC, 2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020) (*Prescott*)5, 9, 10

*Rahman v. Mottis*,
    No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ......................................14

*Schroeder v. United States*,
    569 F.3d 956 (9th Cir. 2009) ..................................................................................................16

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ..................................................................................................16

*Souter v. Edgewell Pers. Care Co.*,
    No. 20-CV-1486 TWR, 2022 WL 485000 (S.D. Cal. Feb. 16 2022) .......................................8

*Stewart v. Kodiak Cakes, LLC*,
    537 F. Supp. 3d 1103 (S.D. Cal. 2021)......................................................................................8

*Vess v. Ciba-Geigy Corp. USA*,
    317 F. 3d 1097 (9th Cir. 2003) ...............................................................................................15

*Walker v. USAA Casualty Insurance Company*,
    474 F.Supp.2d 1168 (E.D. Cal. 2007).....................................................................................16

*Workman v. Plum Inc.*,
    141 F.Supp.3d 1032 (N.D. Cal. 2015) ......................................................................................8

*Yamasaki v. Zicam LLC*,
    No. 21-CV-02596-HSG, 2021 WL 4951435 (N.D. Cal. Oct. 25, 2021) (Gilliam, D.J.)...13, 14

*Youngblood v. CVS Pharmacy*,
    No. 2:20-cv-06251-MCS-MRW, 2021 WL 3700256 (C.D. Cal. Aug. 17, 2021) ...................11

**State Cases**

*McKell v. Washington Mut., Inc.*,
    142 Cal. App. 4th 1457 (2006) ...............................................................................................16

*Shaeffer v. Califia Farms, LLC*,
    44 Cal. App. 5th 1125 (2020) ...................................................................................................6

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009) ............................................................................................................15

**Federal Statutes**

21 U.S.C.
 § 352 ........................................................................................................................ 11
 §§ 379r, 379s ........................................................................................................... 11

FDCA ................................................................................................................................ 6, 11, 13

**Other Authorities**

21 C.F.R. § 100.1(c)(4) ............................................................................................................... 11

21 C.F.R. §§ 201.66, 201.327 .............................................................................................. 12, 15

21 C.F.R. §§ 201.66, 201.327, 700.35 ........................................................................................ 12

21 C.F.R. § 201.66(d)(11)(iv) ..................................................................................................... 12

21 C.F.R. § 201.327(e)(4) .................................................................................................... 12, 15

64 Fed. Reg. 13254, 13268 (Mar. 17, 1999) ......................................................................... 11, 12

76 Fed. Reg. 35619, 35639 (June 19, 2011) ..................................................................... 6, 12, 15

Rule 9(b) ........................................................................................................................... 6, 14, 15

## I. **INTRODUCTION**

Plaintiff's claims rest on the erroneous proposition that the terms "24 HR" and "25 HR" on Coty's dual purpose foundation Products mislead reasonable consumers into believing that the Products provide 24 or 25 hours of SFP protection.[1] These claims are not factually or legally plausible, and therefore, must be dismissed as a matter of law. It is abundantly clear to targeted, reasonable consumers of the Products from the face of the labels that the 24 and 25 hour descriptors apply to the duration of the cosmetic benefits of the foundation (i.e. wear and hydration), not to the SFP protection the Products provide. Moreover, the FDA-compliant "Directions" for use in the Drug Facts panel on the back of the Products specifically advise that the Products must be reapplied every two hours for sun protection. Reasonable consumers do not misinterpret the plain language of labeling statements, or ignore a product's directions for use. Plaintiff's unreasonable conduct does not change this fact. Plaintiff's reliance in her Opposition ("Opposition") on *Prescott v. Bayer Healthcare LLC*, No. 20-cv-00102-NC, 2020 U.S. Dist. LEXIS 136651 (N.D. Cal. July 31, 2020) (*Prescott*), an unpublished case, is misplaced and unpersuasive. In *Prescott*, the court held a reasonable consumer is likely to be misled where there was competing understandings of the phrase "mineral-based" and the back label directly conflicted with the front label claim, as the back label suggested that chemical active ingredients equaled, or exceeded, the amount of mineral active ingredients. Unlike *Prescott*, here there is no competing understanding of the terms "24 HR" or "25 HR," which are tethered to the cosmetic—not sun protection—benefits of the Products, and the back label does not conflict with the front label but rather resolves any alleged ambiguity by specifically instructing users to reapply every two hours for SPF protection. Since all of Plaintiff's claims are based on her unreasonable and implausible purported understanding of the Products' labeling text, her Complaint should be dismissed in its entirety.

The Complaint should also be dismissed because it is preempted by federal law. Plaintiff alleges that the front-label does not adequately inform consumers that the Products' sunscreen protection does not last longer than two hours. However, Plaintiff concedes that that the "Directions" in the Products' Drug Facts panel comply with FDA requirements by specifically instructing consumers to reapply every two hours for sunscreen protection. Critically, the FDA has categorically recognized that these directions

---

[1] Defined terms have the same meaning as in the Motion to Dismiss filed by Coty Inc.

in the Drug Facts panel suffice to alert consumers that dual-purpose products must be reapplied at least every 2 hours for sunscreen use—even when, as here, the products' ***cosmetic benefits*** may last longer. 76 Fed. Reg. 35619, 35639 (June 19, 2011). Because Plaintiff's allegations would require Coty to comply with additional or different requirements than those required by the FDA and because Plaintiff claims that the Products mislead consumers despite adhering to federal labeling requirements, Plaintiff's claims are expressly preempted in their entirety. Plaintiff's claims are also impliedly preempted by the FDCA because as a private citizen, Plaintiff cannot bring a suit, as here, to enforce the FDCA. (Compl. ¶ 5, 18, 74, 80, 100.)

The other arguments in Plaintiffs' Opposition fare no better. Plaintiff lacks standing to obtain equitable relief because she has adequate remedies at law. Plaintiff cannot be deceived by the allegedly misleading labeling again (to the extent she ever was), which defeats standing for injunctive relief. Moreover, Plaintiff lacks standing to pursue claims relating to products she did not purchase and thus her claims for any products other than the one CoverGirl Product she purchased must be dismissed on this additional basis. Plaintiff's consumer claims, which are grounded in fraud, also fail because the Complaint is completely devoid of allegations sufficient to satisfy the heightened particularity standard required by Rule 9(b). Finally, Plaintiff's unjust enrichment claim should be dismissed because "unjust enrichment is not a stand-alone cause of action" in California.

For these reasons, as set forth fully below and in Coty's Motion to Dismiss ("Motion"), Plaintiff's Complaint should be dismissed without leave to amend.

## II.   ARGUMENT

### A.   The Products' Labels Do Not Mislead Reasonable Consumers

As a preliminary matter, courts may determine that a plaintiff's reasonable consumer theory is not plausible as a matter of law at the motion to dismiss stage. *See Moore v. Trader Joe's Co.*, 4 F.4th 874, 880 (9th Cir. 2021) (affirming district court holding on motion to dismiss that label was "not misleading to a reasonable consumer as a matter of law."); *Haskell v. Time, Inc.,* 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) ("if the alleged misrepresentation…is such that no reasonable consumer could be misled, then the allegation may also be dismissed as a matter of law."); *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1140 (2020) (the issue of whether a reasonable consumer would be misled may be resolved on a

1   demurrer) (collecting cases).

2       To survive dismissal, Plaintiff "must demonstrate that a 'reasonable consumer' is *likely* to be
3   misled" in the manner that Plaintiff alleges. *Moore*, 4 F.4th at 880 (emphasis added). "This is not a
4   negligible burden. To meet this standard, Plaintiff[] must demonstrate 'more than a mere possibility that
5   the seller's label might conceivably be misunderstood by some few consumers viewing it in an
6   unreasonable manner.'" *Id.* (citing *Ebner v. Fresh Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). Specifically,
7   Plaintiff must plausibly allege that "a *significant portion* of the general consuming public or of *targeted*
8   *consumers*, acting reasonably in the circumstances," would likely be misled as she allegedly was. *Id.*
9   "[A] plaintiff's unreasonable assumptions about a products' label will not suffice." *Id.* (citing *Becerra v.*
10  *Dr. Pepper/Seven Up., Inc.*, 945 F.3d 1225, 1229–30 (9th Cir. 2019)) (emphasis added).

11      Here, Plaintiffs' allegations do not and cannot show that a significant portion of the general
12  consuming public or targeted consumers are likely to be misled by the Products' labels. Importantly,
13  Plaintiff does not allege that the statements on the Products' labels—"24 HR" wear and "18 SPF" for the
14  CoverGirl Product or "25 HR" hydration boost and "20 SPF" for the Rimmel Product—are false. Instead,
15  Plaintiff alleges that the front label of the Products deceives reasonable consumers into believing that the
16  Products will provide 24 or 25 hours of SPF protection without reapplication. (Comp. ¶ 21–22.) As a
17  preliminary matter, Plaintiff's interpretation of the front label is implausible because products with 24 or
18  25 hour protection simply do not exist. Reasonable consumers of SPF know from a very young age that
19  SPF does not last all day, and must be reapplied incrementally for sun protection.

20      Moreover, nothing in the labels of the Products indicates that that the Products provide 24 or 25
21  hours of sunscreen protection. Instead, the "24 HR" and "25 HR" representations are tethered to the
22  *cosmetic* benefits (*i.e.*, wear and hydration) of the Products. The CoverGirl Product is called "Outlast
23  Extreme Wear" foundation (not, e.g., "Outlast Sun Protection"), which indicates that the makeup
24  foundation will last all day. The terms "24 HR" and "full coverage" on the front label of the CoverGirl
25  Product further represents that the makeup application of the foundation is meant to last all day. Similarly,
26  the Rimmel Product is called "Lasting Finish" and the term "25 HR" supports the assertion that the wear
27  and hydration from the foundation is meant to last for 25 hours. Moreover, the Rimmel Product's "SPF
28  20" sign is completely separate from the terms "Lasting Finish," "25 HR," and "Hydration Boost." Even

Plaintiff concedes that the amount of time the cosmetic properties of the Products lasts is different than the amount of time the SPF properties of the Products lasts. (*Id*. ¶ 4.) Reasonable consumers of the Products easily and readily understand that the cosmetic and sun protection properties of the Products last for different durations, and Plaintiff introduces no allegations to the contrary.

Critically, Plaintiff admits that the Products' labels state that a consumer needs to reapply every two hours for sun protection. Even if the front labels are ambiguous as to whether the 24 hour and 25 hour descriptors apply to the wear of the makeup rather than the SPF protection (they are not), such ambiguity is resolved by the FDA-compliant "Directions" in the Drug Facts in the back of the Products, which clearly state that the Products must be reapplied every two hours if being used for sun protection. (*Id*. ¶ 40.) When reviewing product labeling, reasonable consumers are expected to review "the entire packaging," and "take into account all the information available to [them] and the context in which that information is provided and used." *Moore*, 4 F. 4th at 882. In particular, reasonable consumers do not overlook a product's directions for use. *Souter v. Edgewell Pers. Care Co.*, No. 20-CV-1486 TWR, 2022 WL 485000, at *9 (S.D. Cal. Feb. 16 2022) (finding it unreasonable to expect "Kills 99.99% of Germs" meant product could be used for "disinfecting surfaces or surrounding air particles" when the "'Directions for Use' explicitly stat[ed] that the product should be 'appl[ied] to *hands*.'"); *Gudgel.*, 514 F. Supp. 3d at 1186-87 (concluding use of the "Clorox" brand name did not "imply that the product must contain sanitizing or disinfecting capabilities" because the "label made no statement or suggestion that the product at issue is suitable for sanitization or disinfection" and "the back label specifically states: 'Not for sanitization or disinfection.'"); *see also Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1153 (S.D. Cal. 2021) (dismissing CLRA, FAL, and UCL causes of action when reasonable consumer would be aware of nutrition facts label on the back as a means to clarify any uncertainty); *Workman v. Plum Inc.*, 141 F.Supp.3d 1032, 1035 (N.D. Cal. 2015) ("[A]ny potential ambiguity could be resolved by the back panel of the products, which listed all ingredients . . .").

The Ninth Circuit's ruling in *Moore* is instructive as to the contextual factors appropriately considered in resolving labeling cases. In *Moore*, the Ninth Circuit found that Trader Joe's labeling of honey as "100% New Zealand Manuka Honey" and listing "Manuka Honey" as the sole ingredient was not misleading to a reasonable consumer, despite that the honey only consisted of 57% to 62% honey

derived from a Manuka flower nectar. *Id*. at 879–80. In affirming the District Court's dismissal of the complaint, the Ninth Circuit first noted that the defendant's labels complied with the FDA's labelling requirements. *Id* at 880. While the Ninth Circuit acknowledged there was some ambiguity in the label, it ultimately found that ***reasonable consumers of this "niche, specialty" product*** would know that it was impossible to produce "pure" batches of honey derived only from the Manuka flower and the inexpensive price would further signal to a reasonable consumer of this honey that the jar did not include 100% of honey derived from Manuka. *Id*. at 881, 883–84. "Reasonable consumers would necessarily require more information before they could reasonably conclude that Trader Joe's label promised honey that was 100% derived from a single, floral source," and "a plaintiff's unreasonable assumptions about a product's label will not suffice." *Id*. at 882.

Like consumers of the specialty product in *Moore*, targeted consumers of makeup foundations, including dual purpose versions like the Products, who generally have experience purchasing and using such products, are not likely to be misled by the FDA-compliant labels and are not likely to believe the "24 HR" and "25 HR" indicates the duration of sun protection. Reasonable consumers of makeup foundation understand that the cosmetic wear of the foundation for the Products lasts for 24 or 25 hours, but certainly not the sun protection. As a matter of common sense knowledge, reasonable consumers of any sun protection products know from an early age that they must reapply SPF regularly for sun protection. Even if the front-label is ambiguous (it is not), the Drug Fact panel clarifies any ambiguity with its FDA-compliant direction to reapply for sun protection every two hours. These instructions are consistent with the common knowledge that consumers of these Products develop from a very young age that SPF must be reapplied every two hours for sun protection.

In her Opposition, Plaintiff relies on *Prescott v. Bayer Healthcare LLC*, to support her contention that the "24 HR" or "25 HR" is likely to mislead a reasonable consumer to believe that the SPF protection would last for 24 or 25 hours; however, *Prescott* is utterly distinguishable. In *Prescott*, the plaintiff alleged that the defendants' use of the phrase "mineral based" on the product was false or misleading and subject to multiple reasonable definitions, with both parties provided competing understandings of the term. *Id*. at *20-21. While the defendant argued that "mineral-based" simply meant that mineral active ingredients played a role in the product, the plaintiff alleged that the reasonable consumers would interpret the phrase

to mean that the product contains no chemical active ingredients. *Id*. The court held that the phrase "mineral-based" was ambiguous, and at the pleading stage, it must accept Plaintiffs' view. The court also rejected the defendant's argument that the detailed ingredients list on the back of the product resolved any ambiguity regarding the phrase "mineral-based" label because the ingredients list suggested that chemical active ingredients equaled, or exceeded, the amount of mineral active ingredients, and as such, the back label ingredients directly conflicted with a front label claim. *Id*. (citing *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007 (9th Cir. 2020)).

Unlike *Prescott*, here, there is no competing understanding of the terms "24 HR" and "25 HR." Instead, Plaintiff contends that the 24 HR and 25 HR labels in the front of the Products, when read with the remainder of the front labels, mislead reasonable consumers to believe that the Products provide 24 or 25 hours of SPF protection. However, reasonable consumers of makeup foundations are not likely to be deceived as Plaintiff posits because the targeted consumer knows, as a matter of common sense and experience, that the 24 HR and 25 HR labels are tethered to specific *cosmetic* benefits (i.e. wear and hydration) and not to any SFP protection claims. And unlike *Prescott*, here, the back label does not conflict with the front label claims. Instead, if there is any ambiguity on the front labels (there is not), the FDA-compliant Drug Facts on the back specifically advise that the Product must be reapplied at least every two hours for SFP protection.

The truly analogous case is *Engram v. GSK Consumer Healthcare Holdings (US) Inc.* No. 19-CV-2886(EK)(PK), 2021 WL 4502439, at *5 (E.D.N.Y. Sept. 30, 2021), in which the plaintiff challenged the labeling of a Chapstick product that featured a durational cosmetic wear claim ("9 Hour Moisture") and a SPF protection claim ("SPF 15")). The plaintiff alleged that the proximity of these terms misleads a reasonable consumer to misunderstand that the product provides nine hours of sun protection. *Id*. at *1. The court found this theory of deception "flimsy even solely by reference to the front of the packaging, without resorting to the Directions on the reverse for clarification," because "the package makes no durational claim about the SPF protection on the front of the package at all." The court further held that the plaintiff's interpretation was "inconsistent with the face of the package, and with common sense." *Id*. at *5. Moreover, even if those front-label statements were open to ambiguity, "the more specific statements on the back of the package . . . put any ambiguity to rest," as they "direct[] the consumer . . .

to "reapply at least every 2 hours." Identically to *Engram*, and as discussed *supra*, Plaintiff's interpretation of the Products' label here is implausible because (1) on its face, the "24 HR" and "25 HR" refers to the cosmetic benefits of the dual purpose Products, and (2) any ambiguity is resolved by the FDA-compliant Drug Facts label, which specifies to reapply the Products every two hours for SPF protection.

In her Opposition, Plaintiff attempts to argue that a consumer should not be expected to look to the back of the Product where the instructions to "reapply at least every two hours" statement is "buried under a sticker." (Opp. at 5.) First, even without referring to the back of the Products, a reasonable consumer is not misled here as discussed above. And, second, the FDA mandates manufacturers to label products containing sunscreens in this exact manner when the full Drug Facts information cannot fit on a small package. 64 Fed. Reg. 13254, 13268 (Mar. 17, 1999). Moreover, by explicitly recognizing that peel-back and fold out labels are acceptable "labels" for OTC drugs, the FDA has concluded that their contents are "likely to be read and understood by the ordinary individual under customary conditions of purchase and use." 21 U.S.C. § 352 (information on drug labels must be presented in a manner "as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use"). Therefore, Plaintiff's challenge to the visibility of the FDA-compliant reapplication statement is plainly contradicted by the FDA.

### B.  FDCA Preempts Plaintiff's Claims

Plaintiff's consumer claims must be dismissed because they are expressly preempted by federal law. The FDCA expressly preempts state-law claims that seek to impose manufacturing and labeling requirements for sunscreens and other OTC drugs that are "not identical to" federal requirements of the same type. *See* 21 U.S.C. §§ 379r, 379s; 21 C.F.R. § 100.1(c)(4); *see also*, *e.g.*, *Youngblood v. CVS Pharmacy*, No. 2:20-cv-06251-MCS-MRW, 2021 WL 3700256, at *2 (C.D. Cal. Aug. 17, 2021) ("§ 379r(a) preempts state law claims that require additional information or labeling or that prohibits labeling beyond what is expressly stated in the applicable federal requirements"); *Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198, 1202 (S.D. Cal. 2014) (recognizing § 379r(a)'s preemption provision is "unambiguous and broad in scope" in prohibiting claims that seek to "provide greater consumer protections" that what federal OTC sunscreen rules require); *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1283 (C.D. Cal. 2008) (finding challenge to OTC cough medicines advertised as safe for children was

preempted because labeling was "based entirely upon FDA-approved labeling and advertising," whereas imposing liability under state law would punish manufacturer for "complying with FDA regulations").

Plaintiff first argues that her claims are not preempted because "Plaintiff does not ask Defendant to do more or less than it is required to do by law." (Opp. at p. 9.) Not so. Plaintiff alleges that Coty must remove or alter the terms "24 HR" and "25 HR" on the front label because when read with the FDA-compliant "SPF 18" and "SPF 20" terms, it misleads consumers into believing that the SPF protection lasts for 24 or 25 hours. (Compl. ¶ 22, 41, 60.) As explained *supra*, the interpretation of the front-label statements is implausible because the "24 HR" and "25 HR" statements refer only to the duration of the cosmetic benefits, and does not refer to the SPF benefits. The FDA specifically permits manufacturers to make both cosmetics and sunscreen claims on the labels of dual-purpose products—and does not prohibit manufacturers from labeling those products with cosmetic-duration claims, or otherwise including any unique disclaimers or directions regarding the duration of their sunscreen protection. 21 C.F.R. §§ 201.66, 201.327, 700.35; *see also* 21 C.F.R. § 201.66(d)(11)(iv) (recognizing that drug products may also contain cosmetic claims). Requiring Coty to remove or otherwise alter the front-label directly contradicts the FDA's regulations regarding dual-purpose products.

Plaintiff further alleges that the statement to "reapply at every 2 hours" for SPF protection is deceptively "buried underneath a sticker on the back panel of the Product." (Compl. ¶ 38–39.) But, again, Plaintiff takes issue with labeling that the FDA has specifically authorized and, therefore, Plaintiff requires Coty to do more than the FDA requires. The FDA requires a "Drug Facts" panel, listing ingredients and uses, as well as certain warnings and directions that track the specific language of the OTC sunscreen monograph, be placed on the "outside container or wrapper of the retail package," or the immediate container label if there is no outside container or wrapper." 21 C.F.R. §§ 201.66, 201.327. For small-product containers like the Products, given the limited labeling space, the FDA permits this requirement to be satisfied by placing the Drug Facts panel on peel-back or fold-out labels, which serve to extend the label without increasing the size of the container. 64 Fed. Reg. 13254, 13268 (Mar. 17, 1999). And on the Drug Facts panel, the statement "reapply at least every 2 hours" for SPF protection must be placed beneath the Directions heading; and the Products comply with these requirements. 21 C.F.R. § 201.327(e)(4); 76 Fed. Reg. 35619, 35639 (June 19, 2011). Because Plaintiff's allegations would require

Coty to comply with additional or different requirements than those required by the FDA, Plaintiff's claims are preempted and subject to dismissal.

Plaintiff's claims are also impliedly preempted by the FDCA because they are solely based on purported violations of the FDCA. (Compl. ¶ 5, 18, 74, 80, 100.) It is well-settled law that a private citizen cannot bring a suit to enforce the FDCA, even if the claim is pursued under state law. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001); *Perez v. Nidek Co.*, 711 F.3d 1109, 1118 (9th Cir. 2013); *Nexus Pharm., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1041 (9th Cir. 2022). Yet, Plaintiff brings her claims to enforce the FDCA by asserting the Products are allegedly sold in violation of the sunscreen labeling requirements of the FDCA. (Compl. ¶ 5, 18–19, 33–37, 74, 80, 90, 100.) Therefore, Plaintiff's claims are impliedly preempted and subject to dismissal.

### C.    Plaintiff Lacks Standing To Obtain Injunctive Relief

Plaintiff lacks standing to seek injunctive relief because she has not and cannot allege that she will be misled by the Products in the future as to entitle her to injunctive relief. To have standing to seek injunctive relief, a plaintiff must plead that she faces "a real and immediate threat of repeated injury" that can be remedied. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). It is not enough to allege a "past wrong[] or a "*possible* future injury." *Id.* (emphasis in original). Rather, a plaintiff must show "a sufficient likelihood that [s]he will again be wronged in a similar way." *Id.* at 971. To make this showing in the context of a labeling challenge, a plaintiff must plausibly allege that "she will be unable to rely on the [defendant]'s products' advertising or labeling in the future," and thus will either (1) "refrain from purchasing [defendant's] products in the future" or (2) "may purchase [Defendant's] products *incorrectly* assuming that they have been improved" such that the challenged labeling statement is now true. *Yamasaki v. Zicam LLC*, No. 21-CV-02596-HSG, 2021 WL 4951435, at *4 (N.D. Cal. Oct. 25, 2021) (Gilliam, D.J.) (citing *Davidson*, 889 F.3d at 969-70).

Here, Plaintiff does not allege that she cannot rely on the labeling of the Products in the future, that she will refrain from purchasing the Products in the future, or that she may purchase the Products incorrectly assuming that they provide 24 hours of sunscreen protection. She merely alleges that she continues to desire to purchase cosmetic products, including those marketed and sold by Defendant and

that if the Products were reformulated and/or relabeled without the purported misleading SPF claims, she would likely purchase the Products again in the future. (Compl. ¶ 60.) This is insufficient to allege an imminent or actual threat of future harm caused by the Products' labeling. *Yamasaki*, 2021 WL 4951435, at *4 (allegations that plaintiff "has an intention to purchase the Zicam Products in the future if the Zicam Products are truthfully labeled and not misleading, and are actually clinically proven to shorten colds" did not support standing for injunctive relief, as "buying an accurately labeled product in the future, without more, would not result in any harm").

Further, Plaintiff's allegations concede that Plaintiff is aware that SFP is only fully effective for two hours and she is admittedly on notice now to reapply every two hours for SPF protection, as stated in the FDA-compliant Drug Fact label. (Compl. ¶ 38.) Where, as here, "a plaintiff learns information during litigation that enables her to evaluate product claims and make appropriate purchasing decisions going forward," injunctive relief "would serve no meaningful purpose as to that plaintiff." *Jackson v. Gen. Mills, Inc.*, No. 18CV2634-LAB (BGS), 2020 WL 5106652, at *5 (S.D. Cal. Aug. 28, 2020); *see also Rahman v. Mottis*, No. 13-cv-03482-SI, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) (no standing for injunctive relief where "plaintiff is now aware that 'No Sugar Added' means simply that no sugar was added, and does not indicate that Mott's 100% Apple Juice contains less sugar than or is healthier than other 100 percent apple juices"); *Fernandez v. Atkins Nutritionals, Inc.*, No. 317CV01628GPCWVG, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) (plaintiff lacked standing to pursue injunctive relief because "Fernandez now knows how Atkins goes about calculating its net carbs claims, and she will not be misled next time she goes to Wal-Mart or Target and looks at Atkins's labels"); *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (holding same because "now that Plaintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase ***by simply reading the back panel***") (emphasis added). Because Plaintiff is now aware that, under FDA regulations, products labeled with SPF must be reapplied at least every two hours for sun protection, there is no "real or immediate risk" she will misled again (to the extent she ever was).

### D. Plaintiff's Consumer Protection Claims Fail Under Rule 9(b)

Plaintiff's claims under the CLRA, FAL, and UCL, which are grounded in fraud, fail to satisfy

Rule 9(b)'s heightened pleading requirements.  *See*, *e.g.*, *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1125 (9th Cir. 2009) (rejecting plaintiff's argument that Rule 9(b) does not apply to claims under California's consumer protection statutes grounded in fraud); *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1103–04 (9th Cir. 2003) (rejecting UCL plaintiff's argument that he was not required to state his claim with particularity under Federal Rule 9(b) where UCL claim was "grounded in fraud").  To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must plead the claim with particularity, and mere conclusory allegations of fraud are insufficient.  *Moore v. Kayport Package Exp., Inc.*, 885 F. 2d 531, 540 (9th Cir. 1989).  Moreover, a plaintiff must actually be exposed to the alleged misleading statements, must have relied on the alleged misleading statements, and must have suffered injury as a result.  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 303 (2009) (holding that named plaintiff must plead actual reliance to have standing under UCL).

Plaintiff's claims fail to satisfy this heightened pleading requirements under Rule 9(b).  Plaintiff's allegations that Coty's conduct was "willful and malicious" and that Coty "knew that it would cause harm to Plaintiff" are mere conclusory statements.  (*See* Compl. ¶¶ 96.)  Plaintiff fails to offer any specific allegations to support these legal conclusions.  Moreover, while Plaintiff alleges she only purchased the CoverGirl Extreme 3-in-1 Foundation (Compl. ¶ 55), she seeks relief for alleged misrepresentations contained in other Coty products, including Rimmel and other CoverGirl products (Compl. ¶ 20, 55, 57.) Plaintiff also cannot as a matter of common sense plead fraud as to products that she fails to identify or she never purchased.  (Compl. ¶¶ 20, 61.)

Moreover, Plaintiff alleges that Coty failed to disclose the instruction to reapply at least two hours for sun protection by burying it under a sticker.  (*See*, *e.g.*, Compl. ¶¶ 47-48.)  However, this allegation of fraud cannot survive as a matter of law and common sense because, as explained above, Coty's label complies with the FDA's regulation and compliance with FDA regulations cannot form the basis of a fraud claim.  21 C.F.R.§§ 201.66, 201.327; 21 C.F.R. § 201.327(e)(4); 76 Fed. Reg. 35619, 35639 (June 19, 2011).  Where, as here, the container is small and space is limited, the FDA allows manufacturers to place the Drug Facts panel on peel-back or fold-out labels.  Coty complies with this regulation by placing the Drug Facts, with instructions to reapply every two hours for SFP protection, on a peel-back label. Coty's compliance with the FDA regulations simply cannot be the basis of Plaintiff's fraud claim.

Accordingly, Plaintiff's claims under CLRA, FAL, and UCL must be dismissed with prejudice.

### E. Plaintiff Cannot Recover In Equity

A party seeking equitable remedies – including injunctive relief – under the FAL, UCL and CLRA in a diversity action in federal court must first show that legal remedies are unavailable or inadequate. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); see also *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020); *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009) (No "equitable relief …where an adequate remedy exists at law."). Here, Plaintiff seeks "damages, including without limitation, the amount they paid for the products" and "a full refund of the purchase price paid upon proof that the sale of the Products was unlawful." (Compl. ¶¶ 95, 85, 105). Plaintiff admittedly seeks monetary damages, which bars any equitable relief sought in the Complaint. Plaintiff does not allege any facts supporting the contention that she lacks an adequate legal remedy. Accordingly, Plaintiff's requests for equitable remedies under the UCL, FAL, and CLRA must be dismissed.

### F. Plaintiff's Unjust Enrichment Claim Fails As A Matter Of Law

Plaintiff's fifth cause of action for "unjust enrichment" must be dismissed because California law does not recognize Plaintiff's claim for unjust enrichment as there are no facts Plaintiff could allege to support this claim. *Walker v. USAA Casualty Insurance Company*, 474 F.Supp.2d 1168, 1174 (E.D. Cal. 2007) (emphasis in original) (internal quotation omitted) ("[t]here is ***no cause of*** action in California for unjust enrichment") (quoting *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 794 (2003); *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (2006); *Ham*, 70 F. Supp. 3d at 1191 ("unjust enrichment claim is dismissed because unjust enrichment is not an independent cause of action"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) (dismissing cause of action for unjust enrichment because "California does not recognize a stand-alone cause of action for unjust enrichment").

### G. Leave To Amend Should Not Be Granted

Although leave to amend should be "freely" given under Federal Rule of Civil Procedure 15(a)(2), that liberality does not apply when amendment would be futile. *See Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (leave to amend should be freely given, "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts"). As illustrated above, any further amendment

would be futile as amended pleadings cannot alter the accuracy of Coty's FDA-compliant labels; thus no leave to amend should be given.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court grant Coty's Motion to Dismiss without leave to amend.

Dated: January 13, 2023

**FOLEY & LARDNER LLP**
Erik K. Swanholt
Anum Amin

_____
Erik K. Swanholt
Attorneys for Defendant COTY INC.