UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTOINETTE MEZA,<br><br>    Plaintiff,<br><br>    v.<br><br>COTY, INC.,<br><br>    Defendant. | Case No. 22-cv-05291-NC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF 15 |

Before the Court is Defendant Coty, Inc.'s motion to dismiss Plaintiff Antoinette Meza's putative class action complaint. Defendant proffers a full spectrum of defenses against Plaintiff's claims that its sunscreen labels mislead consumers into believing the products provide 24-hour protection against the harmful effects of the sun. While the pleadings display several deficiencies, the crux of Plaintiff's claims are sound. Accordingly, the Court GRANTS Defendant's motion to dismiss in part, and DENIES in part.

I.  **BACKGROUND**

Sunlight travels to Earth as a mixture of both visible and invisible rays, including ultraviolet ("UV") UVA and UVB rays. ECF 1 ("Compl.") ¶ 24. Unprotected exposure to these UV rays can lead to a litany of damaging health effects, ranging from premature aging to skin cancer. *Id.* ¶ 26. Sunscreen was developed to combat the harmful effects of UV radiation. Consumers can evaluate the "photo-protective efficacy of sunscreens" by

referencing the product's Sun Protection Factor ("SPF"). *Id.* ¶ 3. In general, the higher the SPF, the greater the level of protection afforded the consumer. In recent years, manufacturers have combined the protective qualities of sunscreen with cosmetics to create hybrid products. These are not only appealing to consumers looking to reduce the number of products in their cabinet, but also present an opportunity for manufacturers to access a lucrative market. *Id.* ¶¶ 16-18.

However, sunscreen is a heavily regulated product with respect to its physical properties, as well as how it can be marketed. This raises the issue of which regulatory scheme governs combination sunscreen/cosmetic products. "A product that . . . represents or suggests that it is intended to prevent, cure, treat, or mitigate disease or to affect a structure or function of the body comes within the definition of a drug in section 201(g)(1) of the [Food, Drug, and Cosmetics Act]." 21 C.F.R. § 700.35(a). The active ingredients of sunscreen "affect the structure or function of the body by absorbing, reflecting, or scattering the harmful, burning rays of the sun." *Id.* One such active ingredient is octinoxate. 21 C.F.R. § 352.10(j). Moreover, the use of sun protection terminology on a product's label "generally causes the product to be subject to regulation as a drug." 21 C.F.R. § 700.35(a). Therefore, the products involved in this action are subject to regulation as drugs.

Plaintiff alleges she purchased Defendant's CoverGirl Extreme 3-in-1 Foundation ("CoverGirl Product") several times between 2018-2022. Compl. ¶ 55. Plaintiff includes additional products – the Rimmel Lasting Finish 25HR Foundation ("Rimmel Product"). *Id.* ¶ 20 n.2.[1] The Court collectively refers to these goods as the "Products." The salient feature of the Products in this case are the durational claims. The CoverGirl Product includes a "24 HR" claim on its front label, whereas the Rimmel Product has a "25 HR" claim (collectively referenced as "24/25 HR claims"). In addition, the labels also contain claims to the SPF level of the Products. As the photographs depict, the durational claims

---

[1] Plaintiff also references the CoverGirl Outlast Active Foundation but, as discussed below, the Court dismisses claims related to this product.

2

1  are placed above the SPF statements.



15  Plaintiff does not contest the accuracy of the Products' SPF levels.  Instead, Plaintiff asserts the Products' labels are misleading because the average consumer will interpret the claims to mean the Product will provide coverage for 24 or 25 hours without the need to reapply.  *Id.* ¶ 22.  Plaintiff allegedly purchased the CoverGirl Product under the belief that it "would provide her with 24 hours of coverage and SPF 18 sun protection."  *Id.* ¶ 56.  She further alleges that she would not have purchased or would have paid less for the CoverGirl Product had the product been properly labeled.  *Id.* ¶ 59.

The Products' durational capability, however, is refuted by the Products' drug facts labels, which state "reapply at least every 2 hours."  *Id.* ¶ 38.  This directive is "buried underneath a sticker on the back panel of the Product[s]."  The photographs below depict the drug facts label before and after the pull-back sticker has been removed.

 

Plaintiff alleges five causes of action: (1) violation of California's Unfair Competition Law ("UCL"), Business and Professions Code sections 17200, et seq.; (2) violation of California's False Advertising Law ("FAL"), Business and Professions Code sections 17500, et seq.; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Civil Code sections 1750, et seq.; (4) fraud; and (5) unjust enrichment. Defendant moves to dismiss Plaintiff's complaint in its entirety. ECF 15 ("Mot."). All parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c). ECF 6, 9.

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6): Failure to State a Claim

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

4

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Retail Prop. Trust v. United Bd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). A court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### B. Rule 12(b)(1): Lack of Jurisdiction

Federal courts are courts of limited jurisdiction and are presumptively without jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "Article III of the Constitution limits federal court jurisdiction to cases and controversies." *Flint v. Dennison*, 488 F.3d 816, 823 (9th Cir. 2007) (cleaned up). Rule 12(b)(1) allows a defendant to move for dismissal for lack of subject-matter jurisdiction. It is the plaintiff's burden to establish the existence of subject matter jurisdiction in response to a 12(b)(1) motion. *See Kingman Reef Atoll Inv., LLC v. U.S.*, 541 F.3d 1189, 1197 (9th Cir. 2008).

## III. DISCUSSION

### A. Standing

There are three requirements to establish constitutional standing: "the plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Defendant asserts two theories as to why Plaintiff lacks standing under the first and third element. The Court addresses each in turn.

### 1. Future Harm

Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). To obtain injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quotation marks and citation omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 133 S. Ct. 1138, 1141, 185 L. Ed. 2d 264 (2013) ("allegations of *possible* future injury are not sufficient"). Past wrongs are insufficient by themselves to grant standing for injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

The Ninth Circuit in *Davidson* outlined two potential avenues to establish risk of future harm: (1) the consumer's plausible allegations that they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) "the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved." *Davidson*, 889 F.3d at 969-70.

Here, Plaintiff alleges she (1) "continues to desire to purchase cosmetic products, including those marketed and sold by Defendant," and (2) would likely purchase the Products in the future if they were reformulated and/or relabeled without the misleading 24-hour SPF claims. Compl. ¶ 60. However, these allegations do not explain how she will be harmed again. Plaintiff's purported desire to purchase Defendant's Products in the future is only half the harm. As noted in *Davidson*, the "harm is [plaintiff's] inability to rely on the validity of the information" displayed on the products. 889 F.3d at 971. Plaintiff's pleading conveys the opposite. Rather than explaining how she will refrain from purchasing Defendant's Products in the future, Plaintiff merely alleges a plan to purchase Defendant's products if they are properly labeled. Moreover, the cases upon

which Plaintiff relies refer to the critical element of reliance. *See Milan v. Clif Bar & Co.*, 489 F. Supp. 3d 1004, 1007 (N.D. Cal. 2020) (noting the plaintiff's established likelihood of future harm based on allegation that they " 'will be unable to trust the representations on the Clif Products' absent an injunction"); *Brown v. Van's Int'l Foods, Inc.*, No. 22-cv-00001-WHO, 2022 WL 1471454, at *11 (N.D. Cal. May 10, 2022) (stating plaintiff plausibly pleaded threat of future harm by alleging that she will be "unable to rely on Defendant's label when shopping for protein products in the future"). Therefore, the Court finds that Plaintiff has failed to allege that she faces a threat of future harm from Defendant's labeling. The Court GRANTS Defendant's motion to dismiss as to Plaintiff's claims for injunctive relief with leave to amend.

### 2. Unpurchased Products

Defendant also claims Plaintiff lacks standing to sue over any unpurchased Covergirl, Rimmel, or other Coty product. The complaint references three products: (1) CoverGirl Outlast 3-in-1 foundation, (2) CoverGirl Outlast Active foundation, and (3) Rimmel Lasting Finish 25 HR Foundation. Compl. ¶ 20 n.2.

Under California's UCL and FAL, a private individual has standing only if he "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011). Similarly, the CLRA requires that a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage." *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (quotation marks omitted).

Although unsettled, the prevailing rule is that a plaintiff has standing to assert claims for unnamed class members based on products the plaintiff did not purchase so long as the products and alleged misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *see also Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. 11-cv-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20, 2012). In *Dreyer's*, plaintiffs alleged the "All Natural" labels across several brands of defendant's ice cream products were false and misleading. *Id.* at *1. The court

7

1   noted the fact that the products had different flavors and ingredients was not dispositive.
2   *Id.* at *13. Instead, the court found plaintiffs had standing because the suit involved the
3   same kind of food products and the same labels for all the products. *Id.* Moreover, any
4   material differences would be better addressed at the class certification stage, not at the
5   12(b)(6) stage. *Id.*; *see also Koh v. S.C. Johnson & Son, Inc.*, No. 09-cv-00927 RMW,
6   2010 WL 94265, at *3 (N.D. Cal. Jan. 6, 2010) (deferring ruling on unpurchased products
7   until class certification stage).

8      Here, the Products can all be categorized as foundation makeup. *See* Compl. ¶¶ 21-
9   22. As in *Dreyer's*, despite the different brand names between the Products and (likely)
10  differences in ingredients, the thrust of Plaintiff's claims is the "24 HR" or "25 HR"
11  labeling on the front of the Products' packaging. However, Plaintiff does not provide any
12  illustrations or descriptions of the CoverGirl Outlast Active foundation listed in the
13  complaint. *See Id.* ¶ 21 n.2. Without this information, the Court cannot determine if there
14  is substantial similarity between the Active foundation and the remaining Products.
15  Therefore, the Court GRANTS Defendant's Rule 12(b)(1) motion to dismiss with respect
16  to the CoverGirl Outlast Active foundation with leave to amend. The Court
17  simultaneously DENIES Defendant's Rule 12(b)(1) motion to dismiss as to Plaintiff's state
18  law claims based on the CoverGirl Outlast 3-in-1 foundation and Rimmel Lasting Finish
19  foundation.

20    **B.**  **Preemption**

21     The Supremacy Clause mandates that the "Constitution, and the Laws of the United
22  States which shall be made in Pursuance thereof . . . shall be the supreme Law of the
23  Land." U.S. Const. art. VI, cl. 2. The preemption doctrine flows from the Supremacy
24  Clause and operates by invalidating state laws that "interfere with, or are contrary to,"
25  federal law. *Hillsborough County, Fla. v. Automated Med. Laboratories, Inc.*, 471 U.S.
26  707, 712 (1985) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824)). There are
27  three forms of preemption: express, field, and conflict – the latter two categories are
28  subcategories of implied preemption. *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1230 (9th

Cir. 2013). Defendant asserts Plaintiff's claims are both expressly and impliedly preempted by federal enactments. *See* Opp. at 11-14.

### 1. Express Preemption

Plaintiff alleges the claims are expressly preempted by virtue of the preemption clause in the Food, Drug, and Cosmetic Act ("FDCA"). The FDCA's express preemption clause mandates that "no state . . . may establish or continue in effect any requirement that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter." 21 U.S.C. § 379r(a)(2).

When assessing the effect of a preemption clause "[t]he purpose of Congress is the ultimate touchstone." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996)). In situations where Congress has legislated in a field traditionally occupied by the states, courts assume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Wyeth*, 555 U.S. at 565.

The FDA's final rule, "Labeling and Effectiveness Testing; Sunscreen Drug Products for Over-the-Counter Human Use" ("Final Rule"), establishes various labeling and testing criteria for OTC sunscreen products. 76 FR 35620-01. The Final Rule "identifies claims that render a product that is subject to this rule misbranded." *Id.* The Final Rule is codified in 21 CFR part 201. Under the regulations, claims on sunscreen products that would be false and/or misleading "include but are not limited to the following: 'Sunblock,' 'sweatproof,' and 'waterproof.' These or similar claims will cause the product to be misbranded." 21 C.F.R. § 201.327(g). The regulation states that for products that are not water resistant "the labeling states '[bullet] reapply at least every 2 hours.' " 21 C.F.R. § 201.327(e)(4).

While the precise issue involved in this case has not been litigated in this circuit, the Ninth Circuit has addressed claims arising under similar circumstances. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 758 (9th Cir. 2015). In *Astiana*, the plaintiffs asserted they were deceived by cosmetics labeling that proclaimed the products to be "all

9

1  natural" despite the fact they contained synthetic and artificial ingredients. *Id.* at 756. The

2  defendant asserted such claims were expressly preempted as they "would create a novel

3  state labeling requirement. *Id.* at 758.[2] The Ninth Circuit rejected defendant's claim,

4  reasoning that the "FDA regulations do not require [defendant] to label its products as 'All

5  Natural.' " *Id.* Thus, plaintiffs' claims were not preempted because they did not impose

6  requirements that were "different from," "in addition to," or "not identical with" federal

7  rules. *Id.*

8  Put another way, a claim will not be expressly preempted under the FDCA if

9  defendant's labeling duties would remain the same if plaintiffs prevailed. *Compare Corra*

10 *v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1214 (E.D. Cal. 2013) (plaintiff's

11 claims seeking to prevent sunscreen manufacturer from combining the use of SPF ratings

12 with price differentials and claims of greater protection were not preempted because

13 defendant's SPF labeling duties wouldn't change) *with Gisvold v. Merck & Co.*, 62 F.

14 Supp. 3d 1198, 1202 (S.D. Cal. 2014) (plaintiff's claims seeking to add a disclaimer that

15 sunscreen with SPF values over 50 don't provide increase in clinical benefits was

16 preempted).

17 It is useful to clearly delineate Plaintiff's claims at the outset to determine if they

18 run afoul of the preemption clause. Plaintiff alleges the Products violate California state

19 consumer protection laws because the "24/25 HR" claims misleadingly suggest the

20 Products will provide sun protection for that amount of time when in fact they only

21 provide two hours of protection. Compl. ¶ 40. As in *Astiana*, FDA regulations do not

22 mandate that sunscreen manufacturers include claims pertaining to the product's durational

23 capability. Instead, the regulations state that non-water-resistant products include "reapply

24 at least every 2 hours." 21 C.F.R. § 201.327(e)(4). As such, Plaintiff's claims that the

25 durational statements violate state law would not lead to any additional or different

26 requirements to the existing regulations. Therefore, if Plaintiffs ultimately succeeded,

27

28 [2] The express preemption clause in *Astiana*, 21 U.S.C. § 379s(a), is substantively identical to the express preemption clause for non-prescription drugs at issue in this matter.

1  Defendant's labeling duties would remain the same.

2  Nevertheless, Defendant contends removal of this claim amounts to an additional
3  requirement beyond FDA regulations because the back panels of the Products specifically
4  refer to the two-hour durational limitation. ECF 15 at 13. However, Defendant's addition-
5  by-subtraction theory doesn't hold water because the back labels also wouldn't change.
6  Moreover, the Court declines to validate Defendant's theory that FDA labeling
7  requirements give manufacturers carte blanche to claim whatever they want as long as the
8  back label corrects any misunderstanding. *See Williams v. Gerber Prod. Co.*, 552 F.3d
9  934, 939 (9th Cir. 2008) ("We do not think that the FDA requires an ingredient list so that
10 manufacturers can mislead consumers and then rely on the ingredient list to correct those
11 misinterpretations and provide a shield for liability for the deception."). Accordingly,
12 Plaintiff's claims are not expressly preempted under 21 U.S.C. § 379r.

### 2. Implied Preemption

14 Defendant further alleges Plaintiff's claims are impliedly preempted because they
15 contravene the law prohibiting private enforcement of the FDCA. Mot. at 14. Section
16 337(a) of the FDCA expressly bars private enforcement of the statue, mandating "all such
17 proceedings for the enforcement, or to restrain violations, of this [Act] shall be by and in
18 the name of the United States." 21 U.S.C. § 337(a). Defendant relies heavily on *Buckman*
19 *Co. v. Plaintiffs' Legal Comm.* for the precept that this section preempts private
20 enforcement of the FDCA, even under state law theories. Mot. at 14. However, Defendant
21 overstates this holding.

22 Unlike the present case, *Buckman* involved the premarket approval of strictly
23 regulated medical devices, specifically spinal bone screws. *Id.* at 344. Under that
24 regulatory process, applicants for medical devices could sidestep the lengthy approval
25 process by submitting statements to the FDA that the product was already on the market
26 before the act's enactment. *Id.* at 345. The *Buckman* plaintiffs sought to hold a
27 consultancy company liable for fraudulent representations to the FDA, which led to the
28 bone screws gaining market clearance and, ultimately, harming the plaintiffs. *Id.* at 347.

11

The Supreme Court's analysis refocused the plaintiffs' claims along federalism grounds, noting the claims dealt less with traditional areas of state regulation, than an attempt at "policing fraud against federal agencies." *Id.* By virtue of the comprehensive regulatory scheme underlying the premarket approval process, the FDA was thoroughly vested with the power to punish and deter fraud, as well as balance policy objectives. *Id.* at 348. As such, the plaintiffs' "fraud-on-the-FDA" claims conflicted with this federal prerogative and were thus preempted. Put another way, the *Buckman* claims were preempted because they "exist[ed] solely by virtue of the FDCA disclosure requirements." *Id.* at 352-53. The *Buckman* decision, however, did not foreclose "certain state-law causes of action that parallel federal safety requirements." *Id.* at 353. Instead, a "narrow gap" emerges wherein "plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA." *Perez v. Nidek Co.*, 711 F.3d 1109, 1120 (9th Cir. 2013).

In this case, Plaintiff navigates this narrow gap. As a preliminary matter, the facts of this case are distinguishable from *Buckman*. Whereas *Buckman* dealt with a federal regulatory process overseen by the FDA, this case involves matters of health and safety which fall within the traditional purview of the states' police powers. *See Lohr*, 518 U.S. at 485. This means the Court begins with a presumption *against* finding federal preemption that was not present in *Buckman*. *See Buckman*, 531 U.S. at 347.

Defendant argues that because Plaintiff relies on the FDCA and regulatory guidance, then her claims are based on purported violations of the FDCA, which means they exist solely by virtue of the FDCA. Mot. at 15. However, Plaintiff explicitly repudiates any claims arising under the FDCA. Compl. ¶ 69. Instead, as noted above, Plaintiff's claims mirror the requirements imposed by the FDCA. Moreover, Plaintiff's causes of action does not arise because Defendant's conduct violates the FDCA; rather, she is suing because Defendant's conduct allegedly violates California state laws. *Cf. In re Trader Joe's Tuna Litig.*, No. 16-cv-01371-ODW, 2017 WL 2408117, at *3 (C.D. Cal. June 2, 2017) (plaintiffs' claims were impliedly preempted because they necessarily relied

12

1  upon FDA standards of measurement that were not represented on the packaging to allege
2  tuna fish cans were misleadingly underfilled). Indeed, Plaintiff's claims arise under
3  traditional state tort theories that would exist irrespective of the existence of the FDCA.
4  More fundamentally, Defendant's position would broadly foreclose enforcement of any
5  state consumer protection laws. The Court doubts Congress intended such a sweeping
6  result, particularly in light of the states' police powers. For these reasons, the Court
7  concludes that Plaintiff's claims are not subject to implied preemption.

### C. FRAUD CLAIMS

Defendant argues that Plaintiff fails to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). The rule requires parties alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. The particularity mandate requires plaintiffs to plead the "who, what, when, where, and how" of the misconduct alleged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). The purpose of this heightened pleading standard is to provide defendants notice of the specific misconduct to defend against the charge. *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir.2001)).

The parties do not disagree that Rule 9(b) applies in this case. In any event, Plaintiff satisfies each of the prerequisites. The "who" is clearly Defendant. Compl. ¶ 8. The "what" is the allegedly deceptive marketing statements. *Id.* ¶¶ 1, 4, 19. The "where" is on Defendant's Products' front labels. *Id.* at 22. The "when" is between 2018-2022. *Id.* ¶¶ 55, 61. The "how" is using the "24/25 HR" duration claims to deceive consumers into believing the Products provide that level of SPF sun protection when they actually require reapplication every two hours. *Id.* ¶¶ 19-23.

Defendant's arguments to the contrary are unavailing. First, Plaintiff is not required to plead "specific allegations" for scienter. As stated in Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Second, Plaintiff's allegations regarding unpurchased products are discussed elsewhere in this order. Third, Defendant's references to the pleading purporting to show a fraud-by-

13

omission claim is entirely lacking as those excerpts don't appear to display such a theory. Plaintiff has satisfied the heightened pleading standard under Rule 9(b). The Court DENIES Plaintiff's motion to dismiss on this basis.

### D.     STATE CONSUMER PROTECTION CLAIMS – REASONABLE CONSUMER TEST

Each of Plaintiff's state consumer protection claims are governed by the "reasonable consumer" test. *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer test, Plaintiff must "show that members of the public are likely to be deceived." *Id.* (internal citations omitted). However, this standard requires more than the possibility that the label might be misunderstood by a few consumers viewing it in an unreasonable way. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). Instead, the reasonable consumer standard requires "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (internal citations omitted).

As Defendant points out, the assessment that a label is not misleading can be determined as a matter of law on a motion to dismiss. *See Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1229 (9th Cir. 2019). Because this inquiry is heavily factual, dismissal of claims at this stage is only appropriate in "rare situations." *Williams*, 552 F.3d at 939. For example, if the plaintiff's claims rely on "unreasonable or fanciful interpretations" of the labels, then dismissal on the pleadings may be appropriate. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289−90 (9th Cir. 1995) (affirming dismissal of challenge to sweepstakes mailer where mailer explicitly said plaintiff would win only if he had winning number).

California laws not only prohibit patently false advertising, but also proscribe "advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." *Williams*, 552 F.3d at 938. For these murkier claims that rely on more ambiguous misrepresentations, any qualifying statements, usually included on the back of the label, may assist to clarify the misleading

14

1    claims. *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1017 (9th Cir. 2020). The extent
2    to which courts incorporate such qualifying language into the evaluation on a motion to
3    dismiss depends on whether the back label information conflicts or clarifies the front label
4    misrepresentation. *Id.*

5    For example, the *Williams* case concerned the labeling of defendant's "fruit juice
6    snacks." Specifically, the packaging included statements that the product was made with
7    "fruit juice and other all natural ingredients." *Williams*, 552 F.3d at 936. These statements
8    were juxtaposed with pictures of various fruits. *Id.* In contrast to these representations, the
9    product's main ingredients consisted of corn syrup and sugar, and the only juice contained
10   in the product was white grape juice. *Id.* The circuit rejected the lower court's assessment
11   that a "reasonable consumers should be expected to look beyond misleading
12   representations on the front of the box to discover the truth from the ingredient list in small
13   print on the side of the box." *Id.* This is because the FDA-mandated ingredient list
14   serves the purpose of clarifying or confirming other representations, not providing a
15   "shield for liability" from misleading statements. *Id.*; *see also Bell v. Publix Super
16   Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020) (holding that an accurate fine-print list of
17   ingredients does not foreclose as a matter of law a claim that an ambiguous front label
18   deceives reasonable consumers).

19   Conversely, the Ninth Circuit addressed a situation where an alleged
20   misrepresentation is confirmed by reference to qualifying language. *Moore v. Trader Joe's
21   Co.*, 4 F.4th 874, 883 (9th Cir. 2021). In *Moore*, the plaintiffs alleged defendant's labeling
22   for its "100% New Zealand Manuka Honey" and "New Zealand Manuka Honey" was
23   misleading because the products only derived 57.3% to 62.6% of the honey from Manuka
24   nectar. *Id.* at 876-79. However, the circuit determined the front labels were accurate since
25   the honey was chiefly derived from Manuka flower nectar pursuant to FDA regulations.
26   *Id.* at 881. Nevertheless, the circuit acknowledged the labels could be considered
27   ambiguous with respect to whether the product was "100% Manuka honey, that its
28   contents were 100% derived from the Manuka flower, or even that 100% of the honey was

15

from New Zealand." *Id.* at 882. Unlike cases where manufacturers retain a " 'level of deniability' by clarifying the front-label claim with back -label disclosures," the defendant did not insert additional ingredients or intermingle Manuka honey with non-Manuka honey. *Id.* at 883 (quoting *Bell*, 982 F.3d at 447). Instead, the labels merely listed one ingredient – Manuka honey. *Id.* Therefore, the circuit reasoned, the defendant's labeling did not engender the same type of consumer confusion produced by contradictory labels in *Williams* and *Bell*. *Id.*

In sum, the analysis of these claims proceeds along a spectrum. On one end, plainly fanciful or unreasonable interpretations of a product's labeling are subject to dismissal. *See Freeman*, 68 F.3d at 290. On the other end, false or ambiguous front-label claims cannot be cured by contradicting back-label statements as a matter of law. *See Williams*, 552 F.3d at 939. Between these poles, ambiguous front-label claims that are consistent with back-label claims permit courts greater latitude to consider the surrounding context of the product and packaging to determine if the claims are misleading. *See Moore*, 4 F.4th at 883.

Defendant asserts two mutually reinforcing arguments as to why the product labels are not misleading. First, Defendant contends its labels are not misleading because the "24/25 HR" claims "clearly apply to the wear (CoverGirl) and hydration (Rimmel) qualities" of the dual-purpose Products. Mot. at 9. Second, even if the labels are ambiguous, any confusion is clarified by the reapplication directives in the Drug Facts panel. *Id.* The Court will address each Product individually.

### 1. Rimmel Product

The Court first assesses whether Plaintiff plausibly alleges the Rimmel Product's label would lead to a significant portion of the consuming public to believe that the SPF coverage lasts for 25 hours. Upon review, the Court determines the Rimmel label is not misleading.

Defendant's reference to a similar case in the Eastern District of New York is instructive. *Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-cv-2886

1    EK (PK), 2021 WL 4502439, at *1 (E.D.N.Y. Sept. 30, 2021).  In *Engram*, the plaintiff
2    contended Chapstick labeling was misleading as to the extent of sun protection the product
3    provides.  *Id.*  The Chapstick container included a circular "pop-out" illustration that
4    included both durational claims and references to the product's SPF level.  However, the
5    circle was "bisected horizontally" with the upper portion stating "8 HOUR MOISTURE"
6    in white font against a blue background, whereas the bottom half stated "SPF 15" in blue
7    font with a white background.  *Id.*  The plaintiff alleged the statements together suggested
8    the product provided eight hours of sun protection.  *Id.* at *5.  The court first noted the
9    durational claim clearly pertained to the moisturizing properties because the SPF claim not
10   only had different coloration, but also was separated from the durational claim.  *Id.*
11   Presuming ambiguity, the court nevertheless determined the re-application directions
12   dispelled any potential confusion regarding the product's sun protection capabilities.  *Id.*

13      Here, the Rimmel Product resembles the Chapstick container in *Engram*.  The "25
14   HR" claim is partitioned in a red box directly above the phrase "HYDRATION BOOST,"
15   ensconced in a blue box with an emblem of a water droplet.  Compl. ¶ 21.  These
16   statements are located near the top of the Product's front label.  The "SPF 20" claim,
17   however, is separate from these claims, located roughly halfway down the Product's front
18   label.  Notably, it is not surrounded by a colored box like the previous statements.
19   Moreover, it is written in different colored font than the previous statements.  Plaintiff does
20   not contend that the Product fails to provide 25 hours of moisture, nor that it's SPF is not
21   20.  Instead, she claims the statements, read in tandem, lead to the misleading impression
22   that the Product will last 25 hours.  *Id.* ¶ 22.  However, this is an unreasonable
23   interpretation of the Product's label because there is no connection either stylistically or
24   proximity-wise to connect the durational statement with the SPF claim.  Based on this
25   implausible interpretation, the Plaintiff fails to plead that a significant portion of the
26   consuming public could be mislead by the Rimmel Product's label.  The Court GRANTS
27   Defendant's motion to dismiss as to Plaintiff's deceptive labeling claims with respect to
28   the Rimmel Product.

17

### 2. CoverGirl Product

Plaintiff's claims concerning the CoverGirl Product labeling follow a similar pattern, except the product misleadingly conveys that it provides 24-hours of sun protection. Although a closer call, Plaintiff has properly alleged a reasonable consumer could be misled by the label.

The CoverGirl product is notably different than the Rimmel product because it features a durational claim and SPF claim grouped in close proximity. There are five individual claims that appear in descending order on CoverGirl front-label: "24 HR," "Full Coverage," "SPF 18," "Octinoxate Sunscreen" and "Liquid Foundation." As Plaintiff alleges, when read in vertical fashion, it is reasonable to interpret that the product provides 24 hours of full coverage at SPF 18. Defendant's allegations that the 24-hour descriptor applies to the Product's "wear" does not necessarily conflict with this interpretation. Mot. at 9. For one, Defendant doesn't clarify what it means by the term "wear." Assuming Defendant is referring to the Product's cosmetic qualities, this claim is undercut by the fact the Product's cosmetic qualities ("Liquid Foundation") appear below the phrase "Octinoxate Sunscreen." While falling short of an outright falsehood, the CoverGirl front-label is ambiguous with respect to the level of sun protection it provides.

The ambiguity of the CoverGirl label compels a result akin to the *Williams* case. From the perspective of the consumer, the front-label suggests the Product will last 24-hours. However, this impression would be undermined by the reapplication directive on the back-label. The purpose of the back label directions, like the ingredient list in *Williams*, is to provide clarity on the product's uses, not grant manufacturers an avenue to correct misinterpretations as a "shield for liability." *Williams*, 552 F.3d at 939-40. Compounding this ambiguity is Plaintiff's claim that the reapplication directive is "buried underneath a sticker on the back panel of the Product." Compl. ¶ 38. Construing the allegations in a light most favorable to Plaintiff, the Court notes this adds to the label's ambiguity because the reapplication directives are not immediately visible. Moreover, a consumer may not feel comfortable tampering with the packaging prior to purchasing the

18

1  Product.  Therefore, the Court concludes that Plaintiff has plausibly stated that a
2  reasonable consumer would be deceived by the "24 HR" durational claim on the CoverGirl
3  label.  Accordingly, the Court DENIES Defendant's motion to dismiss as to this particular
4  product.

### E. MISCELLANEOUS RELIEF

#### 1. Equitable Relief

Defendant argues that Plaintiff impermissibly seeks equitable relief in conjunction with her request for damages.  Specifically, Defendant moves to dismiss Plaintiff's claims for equitable relief on the ground that they cannot show a lack of an adequate remedy at law.  ECF 15 at 21.

Defendant primarily relies on *Sonner v. Premier Nutrition Corporation*.  971 F.3d 834, 844 (9th Cir. 2020).  As Plaintiff points out in her opposition, however, *Sonner* was in a far different procedural posture than the case at hand.  In *Sonner*, the plaintiff dropped her CLRA damages claim after four years of litigation, surviving a summary judgment motion, and with only two months before trial.  *Id.* at 837-38.  The strategy was to convert the case to a bench trial, as opposed to a jury trial.  *Id.* at 838.  However, the plan backfired when the district court dismissed (and the Ninth Circuit upheld) that Plaintiff  "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Id.* at 844.

As addressed above, the Court has already dismissed Plaintiff's claims for injunctive relief for lack of standing.  However, Defendant's request to dismiss Plaintiff's restitution claims is premature at this stage in the proceedings.  *See Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022) ("*Sonner* has limited applicability to the pleading stage because it pertained to circumstances in which a plaintiff dropped all damages claims on the eve of trial.").  Moreover, plaintiffs can allege claims in the alternative at the pleading stage.  *Sinatro v. Barilla Am., Inc.*, No. 22-CV-03460-DMR, 2022 WL 10128276, at *16 (N.D. Cal. Oct. 17, 2022) (quoting *Jeong*, 2022 WL 174236, at *27).  The issue of Plaintiff's entitlement to equitable

restitution may be revisited at a later stage.  For now, Defendant's motion to dismiss Plaintiff's claim for restitution is DENIED.

### 2. Unjust Enrichment

Lastly, Defendant asserts Plaintiff's unjust enrichment claim should be dismissed because there is no independent cause of action for unjust enrichment.  ECF 15 at 22.  While there is no standalone cause of action for unjust enrichment in California, it is synonymous with restitution.  *Astiana*, 783 F.3d at 762.  Courts may construe allegations of unjust enrichment as a quasi-contract claim seeking restitution.  *Id.*; *see also Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017) (reversing district court's dismissal of unjust enrichment claim following California Supreme Court decision permitting unjust enrichment as an independent claim).   Plaintiffs are free to seek restitution in the alternative to their other claims per Federal Rule of Civil Procedure 8(d)(2).  *Astiana*, 783 F.3d at 762.  Defendant's motion to dismiss the unjust enrichment claim is DENIED.

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS, IN PART, AND DENIES, IN PART Defendant's motion to dismiss.  The Court GRANTS Defendant's motion to dismiss with respect to (1) Plaintiff's claims for injunctive relief, (2) Plaintiff's claims regarding Outlast Active Foundation, (3) Plaintiff's claims regarding the Rimmel Product.  The Court DENIES Defendant's motion to dismiss with respect to Plaintiff's claims regarding the durational claims of the CoverGirl Product.  Plaintiff may file an amended complaint on or before May 19, 2023.  The amended complaint may not add any claims or parties without leave of Court.

**IT IS SO ORDERED.**

Dated:  April 24, 2023  _____
NATHANAEL M. COUSINS
United States Magistrate Judge